424 F.2d 130
 Lloyd BRIGGS, Dorothy Briggs, Elson Brickey, Francis Brickey, for themselves and others similarly situated, Plaintiffs-Appellants,
v.
Paul S. SAGERS, Director, American Fork Training School, Herbert F. Smart, Director Finance, State of Utah, and the State of Utah, a sovereign, Defendants-Appellees.
 No. 473-69.
 United States Court of Appeals, Tenth Circuit.
 April 7, 1970.
 
 Ronald Rosenberg, Washington, D. C. (Eugene Gressman, Washington, D. C., Gerald G. Gundry and C. Van Drunen, Salt Lake City, Utah, on the brief), for appellants.
 Robert B. Hansen, Deputy Atty. Gen., Salt Lake City, Utah (Vernon B. Romney, Atty. Gen. of Utah, Salt Lake City, Utah, on the brief), for appellees.
 Before MURRAH, Chief Judge, and HILL and HICKEY, United States Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 The appellants instituted this suit pursuant to the Fair Labor Standards Act, to recover unpaid overtime compensation and an additional equal amount as liquidated damages. Jurisdiction was alleged under 29 U.S.C. § 216(b) and 28 U.S.C. § 1337. Primarily on grounds of its sovereign immunity, the State of Utah moved to dismiss for want of jurisdiction. Convinced that the suit was primarily directed against the State of Utah, the District Court held that Utah had not waived its immunity and therefore, "under the Eleventh Amendment to the Constitution of the United States and the antecedent rule of immunity which it recognizes, this court has no jurisdiction to adjudicate the claims here asserted."
 
 
 2
 Factually, this lawsuit was commenced by Utah citizens who are employees of the American Fork Training School, a Utah-owned institution for the custody and treatment of mentally deficient children and adults. The basis for the controversy is in the 1966 amendments to the Fair Labor Standards Act which effectively extended the minimum wage and maximum hours provisions to the complaining workers,[1] and would seemingly make Utah amenable to suit in federal court by individual employees.[2] The difficult question of jurisdiction posed to this court embroils "interests of the United States and problems of immunity, agency, and consent to suit." Maryland v. Wirtz, 392 U.S. 183, 200, 88 S.Ct. 2017, 2025, 20 L.Ed.2d 1020 (1968). In its most concise expression, the issue is the authority of Congress to statutorily create a private cause of action to recover wages due from state employers and to make that right immediately effective on preexisting activities. The inevitable confrontation squares the power of Congress to regulate interstate commerce under the commerce clause against the Eleventh Amendment right of the states to be free from federal court suit, absent consent.[3] Although the Eleventh Amendment does not in terms apply to this case because the defendant state is being sued by its own citizens, the premise of the Amendment has been extended to cover this exigency. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).
 
 
 3
 The theory upon which appellants predicate their right to sue Utah is that of implied consent to suit, as that doctrine was espoused in Parden v. Terminal Railway of Alabama State Docks Department, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). That was a suit in which Alabama citizens sued an Alabama-owned railway in federal court to recover as employees under the Federal Employers' Liability Act. Alabama contended that Congress was without constitutional authority to subject a state to private suit under the FELA because of the Eleventh Amendment guarantee. The Supreme Court held that Congress intended in FELA to condition the States' right to operate railroads in interstate commerce upon a waiver of the States' sovereign immunity to private suits in a federal forum. The Court then discussed the congressional power to impose such a condition on state activity. It was lucidly stated that in the realm of interstate commerce, the congressional authority is supreme and conflicting state interests and rights must yield.[4] The Act authorizes suits against "every common carrier by railroad while engaging in commerce" and the Court decided that by engaging in interstate railroading twenty years after FELA was enacted, Alabama had impliedly waived its immunity to private suits under the Act. The Court reasoned thusly: "By adopting and ratifying the Commerce Clause, the States empowered Congress to create such a right of action against interstate railroads; by enacting the FELA in the exercise of this power, Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the Act; by thereafter operating a railroad in interstate commerce, Alabama must be taken to have accepted that condition and thus consented to suit."[5]
 
 
 4
 The same proposition as presented by appellants in Parden is now being asserted by appellants in the instant controversy and absent prevailing reasons to the contrary, we think that decision to be dispositive of the issue confronting us. Appellees respond that Parden is not controlling for two reasons: (1) the regulated activity here is governmental in nature; and (2) Utah cannot be said to have waived its immunity because it was operating the institution prior to the passage and effective date of the 1966 Amendments.
 
 
 5
 In Maryland v. Wirtz, supra, the Supreme Court concluded that the substantive portions of the 1966 FLSA Amendments were constitutionally permissible regulations on state activities. In the course of that opinion it was made clear "that the Federal Government, when acting within a delegated power, may override countervailing state interests whether these be described as `governmental' or `proprietary' in character."[6] We think that rudimentary principle adequately disposes of appellees' first attempt to distinguish the Parden case.
 
 
 6
 In the Parden case, Alabama became engaged in interstate commerce some twenty years after the FELA was enacted. Appellees contend that it was upon that fact that the Court found an implied waiver of immunity. Here the State of Utah has operated the institution since 1931 and the argument seems to be that because the State was not originally put to the choice of entering the field and thereby waiving its immunity, or staying out of the endeavor, subsequent amendments to the FLSA should not impose an immediate waiver on the basis of continued activity. Appellants suggest that since Utah has knowingly and directly continued to operate in interstate commerce subsequent to the 1966 FLSA amendments, the State, ipso facto, must be deemed to have consented to suits authorized by the Act.
 
 
 7
 The question of whether Utah's continued participation in a sphere of authority subject to the constitutional power of the federal government amounted to consent, is one of federal law.[7] Citizens Committee for Hudson Valley v. Volpe, 297 F.Supp. 809 (S.D.N.Y.1969) is extensively cited in appellees' brief but is of little assistance to their case. That controversy is easily distinguished on the grounds that no cause of action was given to the plaintiffs by the statutes in question. In such circumstances the court was properly reluctant to imply New York's consent to a suit not provided for in the governing act. Other authorities cited by the parties are of little aid to the court since the cases either deal with state activity commenced after the controlling act's passage[8] or there is no indication as to when the activity was first begun.[9] Nonetheless, we think the express intent of Congress and the language of Parden must control the matter. The regulatory power of Congress, although limited to constitutionally defined matters, e. g., interstate commerce, is plenary as to those matters.[10] Since the FLSA was enacted through the authority of the Commerce Clause,[11] and inasmuch as the right of action imposed by the FLSA is fully within the congressional regulatory power, it would be incongruous to deny Congress the power to name a prompt, effective date for such amendments. To suppress that corresponding power would run counter to the plenary nature of the constitutionally defined regulatory authority and could, in part, defeat the purpose of urgently required legislation.
 
 
 8
 The legislative history of the 1966 FLSA Amendments reflects that passage was to attain a "minimum standard of living necessary for health, efficiency, and general well-being of workers * * * with all deliberate speed consistent with the policy of the act and the welfare of the American people."[12] This demonstrates to our satisfaction that Congress contemplated the financial burden that the Amendments could cause for the states. But the overall purpose of the FLSA tacitly suggests that the imposition of such strain is outweighed by the underlying policy of the Act. In sum, what Congress has done is within constitutional bounds and, as such, will not be disturbed by the Judiciary.
 
 
 9
 Although Parden does rely in part upon an intervening lapse of twenty years, it is not so crucial to the principles involved as to cause reversal absent that fact. Appellees' interpretation of the case implies that because there was a twenty year delay in commencing the interstate business, Alabama must have made a knowing and intelligent waiver. If that were true, we think the twenty year language would increase in significance. However, the argument is unpersuasive in light of Alabama's contention that the State did not intend to waive its immunity or know that such a waiver would result. Furthermore, even the dissent in Parden did not view the opinion as pivoting on the fact of an intentional waiver. Rather, the dissenting Justices understood the majority to hold "that with regard to sovereign immunity, waiver of a constitutional privilege need be neither knowing nor intelligent."[13] Under that rule, we think it sufficient that when Utah continued its operation of the institution, knowing of the passage of the 1966 Amendments, it waived its immunity to the remedies provided in the Act.
 
 
 10
 When Congress constitutionally hinges the right of a State to engage in interstate comemrce upon its amenability to a federal court suit by private parties, the States must decide eo instante whether to continue or withdraw. If, because of an immediate effective date on an enactment, a State is unable to make a timely withdrawal, and is caught in a bona fide attempt to withdraw, a situation might be presented so as to call for different results. But here it was never made manifest by Utah's actions that it had not decided to continue and thus render itself suable. In fact, the contrary appears quite clearly from its subsequent adherence to the substantive portions of the FLSA.
 
 
 11
 Utah, by having continuously operated the American Fork Training School after the February 1, 1967, effective date of the FLSA Amendments, has indulged in an endeavor subject to federal regulation and having done so, has waived its immunity and consented to suits permitted by the FLSA.
 
 
 12
 The case is reversed and remanded for further proceedings.
 
 
 
 Notes:
 
 
 [1]
 29 U.S.C.A. § 203(s) (4) (Supp.1970):
 "(s) `Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which —
 * * * * *
 (4) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children * * * (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit)."
 29 U.S.C.A. § 203(d) (Supp.1970):
 "(d) `Employer' * * * shall not include the United States or any State or political subdivision of a State (except with respect to employees of a State, or a political subdivision thereof, employed (1) in a hospital, institution, or school referred to in the last sentence of subsection (r) of this section * * *) * * *."
 
 
 [2]
 29 U.S.C.A. § 216(b)
 
 
 [3]
 "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
 
 
 [4]
 "While a State's immunity from suit by a citizen without its consent has been said to be rooted in `the inherent nature of sovereignty,' Great Northern Life Ins. Co. v. Read, supra, 322 U.S. 47, 51, 64 S.Ct. 873, 875, [88 L.Ed. 1121] the States surrendered a portion of their sovereignty when they granted Congress the power to regulate commerce." [at 191, 84 S.Ct. at 1212]
 "By empowering Congress to regulate commerce, then, the States necessarily surrendered any portion of their sovereignty that would stand in the way of such regulation. Since imposition of the FELA right of action upon interstate railroads is within the congressional regulatory power, it must follow that application of the Act to such a railroad cannot be precluded by sovereign community [sic]." [at 192, 84 S.Ct. at 1212].
 
 
 [5]
 Parden v. Terminal Ry., 377 U.S. at 192, 84 S.Ct. at 1213
 
 
 [6]
 Maryland v. Wirtz, 392 U.S. 183, 195, 88 S.Ct. 2017, 2023, 20 L.Ed.2d 1020 (1968)
 
 
 [7]
 Parden v. Terminal Ry., 377 U.S. 184, 196, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); Chesapeake Bay Bridge and Tunnel Dist. v. Lauritzen, 404 F.2d 1001 (4th Cir. 1968)
 
 
 [8]
 Lauritzen v. Chesapeake Bay Bridge and Tunnel Dist., 259 F.Supp. 633 (E.D.Va. 1966),rev'd on other grounds, 404 F.2d 1001 (4th Cir. 1968).
 
 
 [9]
 Huckins v. Board of Regents of Univ. of Michigan, 263 F.Supp. 622 (E.D.Mich. 1967); Cocherl v. State of Alaska, 246 F.Supp. 328 (D.Alaska 1965)
 
 
 [10]
 Parden v. Terminal Ry., 377 U.S. 184, 191, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (1936); Gibbons v. Ogden, 9 Wheat. 1, 196-197, 6 L.Ed. 23, 70 (1824)
 
 
 [11]
 Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968)
 
 
 [12]
 2 U.S.Cong. and Admin.News, 1966, at p. 3004
 
 
 [13]
 Parden v. Terminal Ry., 377 U.S. at 200, 84 S.Ct. at 1217