**EMPLOYEES OF the DEPARTMENT OF PUBLIC HEALTH & WELFARE, STATE OF MISSOURI, et al., Appellants,**

v.

**DEPARTMENT OF PUBLIC HEALTH & WELFARE, STATE OF MISSOURI, et al., Appellees.**

**No. 20204.**

United States Court of Appeals, Eighth Circuit.

Nov. 11, 1971.

Certiorari Granted March 27, 1972. See 92 S.Ct. 1294.

Bright, Circuit Judge, dissented and filed opinion in which Circuit Judges Lay, Heaney and Stephenson concurred.

Stephenson, Circuit Judge, also filed a dissenting opinion.

---

Charles R. Oldham, St. Louis, Mo., for appellants.

Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, Mo., John C. Danforth, Atty. Gen., for appellees.

Before MATTHES, Chief Judge, VAN OOSTERHOUT,* Senior Circuit Judge, and MEHAFFY, GIBSON, LAY, HEANEY, BRIGHT, ROSS and STEPHENSON, Circuit Judges, sitting en banc.

---

* Judge Van Oosterhout participated in the decision of this case by a panel of this court in which opinion was filed on April 2, 1971.

VAN OOSTERHOUT, Senior Circuit Judge.

Plaintiffs, named employees of various Missouri State institutions, brought this class action under 29 U.S.C.A. § 216(b) [1] to recover unpaid overtime compensation due them under the Fair Labor Standards Act as amended, 29 U.S.C.A. § 201 et seq. They also seek an equal amount as liquidated damages and ask for attorney's fees, all of which is provided for by § 216(b).

Plaintiffs are named employees of five mental hospitals and a cancer hospital operated by the State of Missouri, and employees of the state training schools for girls operated under the Department of Corrections of the State of Missouri.[2]

Defendants are the Department of Public Health & Welfare of the State of Missouri, the State Board of Training Schools and various State Board members and officials having supervision of the state hospitals and training schools. Such officials are sued in their official capacity and as individuals.

The trial court sustained defendants' motion to dismiss the complaint upon the ground that this is a suit by citizens of the State against the State and as such is barred by the Eleventh Amendment. Plaintiffs took a timely appeal from the judgment of dismissal.

A panel of this court to which the appeal was submitted reversed the judgment of dismissal for reasons stated in an opinion filed April 2, 1971. The writer of this opinion dissented. A rehearing en banc was granted; supplemental briefs were filed by the parties. At the invitation of the court, James D. Hodgson, Secretary of Labor, filed a brief amicus curiae supporting the position of the plaintiff-employees. Rehearing en banc was held on September 13, 1971.

The basic issue presented by this appeal is whether the plaintiffs' action is barred by the Eleventh Amendment. The subsidiary question is whether the State has waived sovereign immunity. We hold that the present action is barred by the Eleventh Amendment and that the State of Missouri has not waived sovereign immunity or consented to this suit. We vacate our prior judgment of reversal and affirm the judgment of dismissal for the reasons hereinafter stated.

The Fair Labor Standards Act of 1938 did not cover State employees. Employees of State schools and hospitals were first brought under the coverage of

---

1. 29 U.S.C.A. § 216(b) reads:

"Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection."

2. This action is brought as a class action. Section 216(b) provides that no employee shall be a party plaintiff unless written consent thereto is given and filed with the court. Such consent has been given by the named plaintiffs. Whether consent has been given by other members of the class does not appear. The issue of whether members of the class other than named plaintiffs are covered by this action is immaterial in light of the dismissal. We express no opinion upon this issue.

the Act by a 1966 amendment. The nature and scope of the Amendment are set out in Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020. The majority opinion in that case authoritatively determined that Congress can and did under its Commerce Clause power make the overtime and minimum wage provisions of the Fair Labor Standards Act as amended applicable to employees of State schools and hospitals.

All of the State hospitals here involved fairly fall within the definition of hospital in the amended Act. Under Wirtz, the hospital employees are clearly covered by the Act. A fact issue arises as to whether the training school for girls is a school within the meaning of the amended Act but we will for the purpose of this case assume that it is a school without so deciding.

We now reach the sovereign immunity issue. The Eleventh Amendment, which became effective in 1794, reads:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Although the Eleventh Amendment by its terms bars only suits against the State by citizens of other States, the Amendment has been consistently interpreted as barring suits against the State by its own citizens. Parden v. Terminal Ry., 377 U.S. 184, 84 S.Ct. 1207, 12 L. Ed.2d 233; Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842. As pointed out in *Hans*, the Eleventh Amendment was the prompt response of Congress, the States and the people to the holding of a divided Supreme Court in Chisholm v. Georgia, 2 Dall. 419, 1 L.Ed. 440, that states were subject to suits by individuals. Supreme Court opinions handed down since Chisholm have repudiated the majority opinion in that case rejecting pre-Eleventh Amendment sovereign immunity on the part of the States. Thus in Monaco v. Mississippi, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282, the Court

denied the right of a foreign government to sue a State on the basis of sovereign immunity. No express State immunity from such a suit is found in the Constitution. The Court quotes views expressed by Madison, Hamilton and Marshall and states:

> "There is also the postulate that States of the Union, still possessing attributes of sovereignty, shall be immune from suits, without their consent, save where there has been 'a surrender of this immunity in the plan of the convention.'" 292 U.S. 313, 322–323, 54 S.Ct. 745, 748.

The Court holds:

> "The 'entire judicial power granted by the Constitution' does not embrace authority to entertain such suits in the absence of the State's consent. Ex parte State of New York, No. 1, *supra* [256 U.S. 490], p. 497 [41 S.Ct. 588, 65 L.Ed. 1057]; Missouri v. Fiske, 290 U.S. 18, 25, 26 [54 S.Ct. 18, 78 L.Ed. 145].
>
> "4. Protected by the same fundamental principle, the States, in the absence of consent, are immune from suits brought against them by their own citizens or by federal corporations, although such suits are not within the explicit prohibitions of the Eleventh Amendment. * * *" 292 U.S. 313, 329–330, 54 S.Ct. 745, 751.

Accord, Parden v. Terminal Ry., supra; Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 51, 64 S.Ct. 873, 88 L.Ed. 1121; Hans v. Louisiana, 134 U.S. 1, 10–16, 10 S.Ct. 504, 33 L.Ed. 842.

■ It fairly appears from the authorities just cited that a state is immune from a suit brought against it by its citizens on the basis of a reasonable interpretation of the original Constitution and additionally upon the basis of the Eleventh Amendment.

Parden v. Terminal Ry., supra, relied upon by the plaintiffs and by the Tenth Circuit in Briggs v. Sagers, 10 Cir., 424 F.2d 130, in both the majority and minority opinion, fully recognizes that sovereign immunity exists upon the factual

background both in that case and in this case. The *Parden* majority holds: "Recognition of the congressional power to render a State suable under the FELA does not mean that the immunity doctrine, as embodied in the Eleventh Amendment with respect to citizens of other States and as extended to the State's own citizens by the *Hans* case, is here being overridden. It remains the law that a State may not be sued by an individual without its consent." 377 U.S. 184, 192, 84 S.Ct. 1207, 1213.

The *Parden* minority in an opinion by Mr. Justice White, concurred in by Justices Douglas, Harlan and Stewart, agrees that State immunity exists, stating:

"The majority today follows the Court's consistent holdings that an unconsenting State is constitutionally immune from federal court suits brought by its own citizens as well as by citizens of other States. It should not be easily inferred that Congress, in legislating pursuant to one article of the Constitution, intended to effect an automatic and compulsory waiver of rights arising under another." 377 U.S. 184, 198, 84 S.Ct. 1207, 1216.

The minority opinion then expresses sharp disagreement with the view of the majority on the waiver issue:

"In previous opinions the Court has indicated that waiver of sovereign immunity will be found only where stated by 'the most express language, or by such overwhelming implication from the text as would leave no room for any other reasonable construction.' Murray v. Wilson Distilling Co., 213 U.S. 151, 171 [29 S.Ct. 458, 464, 53 L.Ed. 742]. See Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 468–470 [65 S.Ct. 347, 352–353, 89 L.Ed. 389]. If the automatic consequence of state operation of a railroad in interstate commerce is to be waiver of sovereign immunity, Congress' failure to bring home to the

State the precise nature of its option makes impossible the 'intentional relinquishment or abandonment of a known right or privilege' which must be shown before constitutional rights may be taken to have been waived. Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461]; Fay v. Noia, 372 U.S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837]. The majority in effect holds that with regard to sovereign immunity, waiver of a constitutional privilege need be neither knowing nor intelligent." 377 U.S. 184, 199–200, 84 S.Ct. 1207, 1217.

The critical issue in our present case, as in *Parden*, is whether the State has consented to a suit against it by its citizen employees. The Supreme Court in *Wirtz* clearly states that it is not passing on the sovereign immunity issue which now squarely confronts us. The Court cites *Parden* but does not discuss or pass upon whether the *Parden* waiver theory applies in the present situation.[3]

On the sovereign immunity issue, the *Wirtz* Court states:

"Percolating through each of these provisions for relief are interests of the United States and problems of immunity, agency, and consent to suit. Cf. Parden v. Terminal R. Co., 377 U.S. 184 [84 S.Ct. 1207, 12 L.Ed.2d 233]. The constitutionality of applying the substantive requirements of the Act to the States is not, in our view, affected by the possibility that one or more of the remedies the Act provides might not be available when a State is the employer-defendant. Particularly in light of the Act's 'separability' provision, 29 U.S.C. § 219, we see no reason to strike down otherwise valid portions of the Act simply because other portions might not be constitutional as applied to hypothetical future cases. At the same time, we decline to be drawn into an abstract discussion of the numerous complex issues that

---

3. The Supreme Court had divided sharply on the waiver issue in Parden. At the time of the Wirtz decision, only two members of the Parden majority remained on the Court. The four dissenters remained on the Court.

might arise in connection with the Act's various remedial provisions. They are almost impossible and most unnecessary to resolve in advance of particular facts, stated claims, and identified plaintiffs and defendants. *Questions of state immunity are therefore reserved for appropriate future cases.*" (Emphasis added.) 392 U.S. 183, 200, 88 S.Ct. 2017, 2025.

Thus the question of whether the *Parden* waiver theory applies to the factual situation presented by this case is an open and undecided issue.

As heretofore pointed out the original Constitution and the Eleventh Amendment afford States as sovereigns immunity from suits by private individuals. It is not disputed that the present action against State officials is in effect a suit against the State. See Maryland v. Wirtz, supra; Great Northern Life Ins. Co. v. Read, supra, p. 51 of 322 U.S., 64 S.Ct. 873.

The parties to this action agree that the State of Missouri has no constitutional or statutory provision authorizing a suit such as this and that it has never expressly consented to this suit.

If any consent to the present suit exists, it arises out of the *Parden* waiver theory. Plaintiffs contend waiver of State sovereign immunity must be applied upon the basis that the State continued to operate its hospitals and training schools subsequent to the adoption of the 1966 Amendment to the Fair Labor Standards Act. Waiver has been defined as "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461; Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837.

■ In Johnson v. Zerbst, p. 464 of 304 U.S., p. 1023 of 58 S.Ct., the Court states: "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.'" The constitutional right involved was the accused's right under the Sixth Amendment to be represented by counsel. Here the constitutional right involved is sovereign immunity granted by the Eleventh Amendment. The United States, like State governments, possesses sovereign immunity.

With respect to sovereign immunity by the United States, the Supreme Court reads consent to jurisdiction provisions of the statutes restrictively. Honda v. Clark, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244; McMahon v. United States, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26; United States v. Sherwood, 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888. See Peterson v. United States, 8 Cir., 428 F.2d 368.

■ Controlling legal principles and proper federal-state relations require that the standards applicable to federal immunity should be applicable to the sovereign immunity of the States.

The appropriate principles applicable to State sovereign immunity are well summarized by Mr. Justice White in his dissenting opinion in *Parden* heretofore referred to.

■ A serious doubt exists whether Congress could by express and appropriate language provide that a State by continuing to operate essential government functions, such as here involved, would lose its constitutionally guaranteed sovereign immunity. The prohibition of suits by individuals against the State is stated broadly in the Eleventh Amendment. There is no language in the Amendment which expressly or impliedly excepts from its operation rights given the federal government under the Commerce Clause. To the extent that any inconsistency exists between the powers granted by the Commerce Clause and the Eleventh Amendment, the Eleventh Amendment as the more recent expression of the will of the people should prevail. See 16 Am.Jur.2d, Constitutional Law, § 69 and cases there cited.

■ If any balancing of rights under the Commerce Clause against the right of

the State's sovereign immunity is required, the well-recognized constitutional guarantee of sovereign immunity should prevail. An adverse effect on commerce which might result from preserving sovereign immunity in the present situation is minimal, particularly in view of other available remedies for enforcement of the provisions of the Act.[4]

The discontinuance of the State mental hospitals for those needing care and unable to pay, and the discontinuance of the correctional schools would seriously adversely affect the public interest and welfare of the State. If the State ceased to perform such services, it is unlikely that private enterprise would step in to fill the need.

Moreover, we find nothing in the 1966 amendment to the Fair Labor Standards Act or in its legislative history which fairly informs the State that it will lose its constitutionally granted sovereign immunity by continuing to operate its hospitals and training schools. Prior to the resolution of the issue in *Wirtz*, a substantial question existed as to whether the provisions of the Fair Labor Standards Act could be extended to the States. See dissenting opinion in *Wirtz*.

■ We are satisfied that the State at no time knowingly and intelligently waived its sovereign immunity defense to the present action. The continuance by the State of its mental hospitals and training schools subsequent to the 1966 amendment does not constitute a waiver of sovereign immunity.

The waiver rule announced in *Parden* would have to be enlarged and extended to fit the present case. *Parden* is distinguishable from our present case in four respects:

(1) In *Parden* the Court states, "It would be even more surprising to learn that the FELA does make the Terminal Railway 'liable' to petitioners, but, unfortunately, provides no means by which that liability may be enforced." 377 U.S. 184, 197, 84 S.Ct. 1207, 1215.

The *Wirtz* Court specifically recognized that remedies other than those provided in § 216(b) are available. Such remedies are provided for in the form of actions by the Secretary under §§ 216(c) and 217. Suits by State employees for injunctive relief may be available against State officials in their individual capacities under Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714.

■ (2) The remedy sought in *Parden* did not include double damages. Section 216(b) permits double damages and allowance of attorney's fees. It cannot reasonably be inferred from the statute and its legislative history that Congress intended to impose such penalties on sovereign States. The Secretary in brief states that the trial court in its sound discretion can under 29 U.S.C.A. § 260 withhold liquidated damages or reduce such damages, and consequently the liquidated damages issue is premature. We do not agree. Under § 260 remission of liquidated damages in whole or in part is only allowable "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, * * *." And even if the required showing is made, the remission is left to the sound discretion of the court.

Upon this record, it cannot be said that there is any certainty that a federal court will make the finding required by § 260, or if such finding is made, that it would be an abuse of discretion for the court to allow double damages.

■ To permit a federal court to punish a State by awarding double damages is inconsistent with the well-entrenched doctrine of sovereign immunity and the historical background of such immunity.

(3) The *Parden* majority states: "But when a State leaves the sphere that is exclusively its own and enters into ac-

---

4. The Secretary in his brief states that he commenced an action on January 27, 1971, for injunction and back-pay on behalf of the State hospital employees.

tivities subject to congressional regulation, it subjects itself to that regulation as fully as if it were a private person or corporation." 377 U.S. 184, 196, 84 S.Ct. 1207, 1215. The operation of the railroad in *Parden* is a proprietary function which could reasonably be considered as a departure by the State from a sphere that was exclusively its own. The operation of the mental hospitals and training schools in our present case is a governmental function. Hospitalization of a substantial number of mental patients is required for the protection of the public as well as the patients.

The State has no realistic option open to it to discontinue its mental hospitals and training schools forthwith.

(4) In *Parden*, the Federal Labor Standards Act had been in effect for some twenty years before the State commenced its railroad operation. In our present case, the State hospitals and training schools had been in existence and operation for many years before the enactment of the 1966 Amendment of the Fair Labor Standards Act. The State did not enter into any new form of activity subsequent to the enactment of the Amendment.

The factual distinctions between our present case and *Parden* are such as to satisfy us that the *Parden* waiver of sovereign immunity holding should not be extended to and applied in the present situation. We are convinced that the State has not waived its sovereign immunity or consented to be sued in an action by its hospital and training school employees for overtime compensation under § 216(b).

The prior judgment of this court reversing the judgment of the trial court dismissing the complaint is vacated and set aside. The judgment dismissing the complaint is affirmed.

BRIGHT, Circuit Judge, with whom LAY, HEANEY and STEPHENSON, Circuit Judges, join dissenting.

We reject the thesis of the majority that any waiver of sovereign immunity to suit in this case must rest upon actual, as opposed to constructive, consent to be sued by the State of Missouri. Where, as here, state policy conflicts with a federally created right, the question of waiver vel non is determined by the scope and effect of the federal law.

In resolving the issue whether Missouri has waived its Eleventh Amendment immunity to private suit within the context of the 1966 amendments to the Fair Labor Standards Act, it is necessary to examine the nature of the federally created right, the constitutional underpinning for the federal legislation, and the intent of Congress.

The State of Missouri operates schools and hospitals, the employees of which are now entitled to minimum wages and overtime compensation pursuant to the 1966 amendments to the Fair Labor Standards Act (FLSA). The Act gives an employee or employees a right of action "in any court of competent jurisdiction" to recover amounts due from an employer who violates the minimum wage or overtime compensation provisions of the Act.[1]

Pursuant to these amendments and other provisions of the Fair Labor Standards Act (29 U.S.C. §§ 201–19), plain-

---

1. 29 U.S.C. § 216(b). The Fair Labor Standards Act provides several remedies. In addition to granting employees a private right of action for their unpaid minimum wages or unpaid overtime compensation, they may also recover "an additional equal amount as liquidated damages" and may collect "a reasonable attorney's fee * * * and costs." *Id.* The Act also provides that, upon written request by an eligible employee, "the Secretary of Labor may bring an action in any court of competent jurisdiction to recover the amount of such claim. * * *" 29 U.S.C. § 216(c). However, the consent of an employee to an action by the Secretary of Labor constitutes "a waiver by such employee of any right [of action] he may have under subsection (b)." *Id.* The Secretary may also bring an action seeking injunctive relief against any employer violating the Act. 29 U.S.C. §§ 211(a), 217.

tiffs, employees of several Missouri state institutions, brought the present action seeking to recover unpaid overtime compensation and additional amounts for liquidated damages and attorney's fees. The parties agree that the instant suit is primarily directed against the State of Missouri, and the plaintiffs further admit that Missouri has never expressly consented to this suit. On motion by the State, the federal district court dismissed the action, concluding that the principles of sovereign immunity incorporated in the Eleventh Amendment bar federal judicial action in this suit. Plaintiffs prosecute this appeal from the judgment of dismissal. Upon initial submission of this case, a panel of this court reversed the district court (Bright, Circuit Judge, and Neville, District Judge, for reversal; Van Oosterhout, Circuit Judge, dissenting).[2] For the reasons stated below, we agree with the panel decision and would reverse.

We first review briefly the statutory history of the Fair Labor Standards Act of 1938, and the 1966 amendments thereto. This legislation serves "to protect certain groups of the population from substandard wages and excessive hours which [endanger] the national health and well-being and the free flow of goods in interstate commerce." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706, 65 S. Ct. 895, 902, 89 L.Ed. 1296 (1945). *See* 29 U.S.C. § 202. In its original form, the Act *specifically excluded* "any State or political subdivision of a State" from the definition of an "employer" subject to the provisions of the Act. In 1966, Congress extended the protection afforded by the Act to the employees of any institution or enterprise which is

engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, an elementary or secondary school, or an institution of

higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit). [29 U.S.C. § 203(s) (4) (Supp.1970)]

Congress also expanded the Act's definition of "employer" to include the States and their political subdivisions, thus affording the protection of the Act to state employees working in such hospitals, institutions, and schools. 29 U.S.C. § 203(d) (Supp.1970).

In Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), the Supreme Court held the 1966 amendments to constitute valid legislation enacted pursuant to the federal commerce power. The Court rejected the contentions of Maryland and other states that Congress' power over interstate commerce must yield to a state's sovereign immunity in the latter's performance of its governmental functions. Justice Harlan, speaking for the Court, observed:

If a State is engaging in economic activities that are validly regulated by the Federal Government when engaged in by private persons, the State too may be forced to conform its activities to federal regulation. [392 U.S. at 197, 88 S.Ct. at 2024]

The Court, however, specifically reserved comment on the enforceability of the provisions of the Act through which suits could be directed against the State. The majority stated:

Percolating through each of these provisions for relief are interests of the United States and problems of immunity, agency, and consent to suit. Cf. Parden v. Terminal R. Co., 377 U.S. 184 [84 S.Ct. 1207, 12 L.Ed.2d 233]. The constitutionality of applying the substantive requirements of the Act to the States is not, in our view, affected by the possibility that one or more of the remedies the Act provides might not be available when a State is the employer-defendant. Particularly in light of the Act's "separability" provision, 29 U.S.C. § 219, we see no rea-

---

2. The panel opinion, No. 20,204, April 2, 1971, is unreported.

son to strike down otherwise valid portions of the act simply because other portions might not be constitutional as applied to hypothetical future cases. At the same time, we decline to be drawn into an abstract discussion of the numerous complex issues that might arise in connection with the Act's various remedial provisions. They are almost impossible and most unnecessary to resolve in advance of particular facts, stated claims, and identified plaintiffs and defendants. Questions of state immunity are therefore reserved for appropriate future cases. [392 U.S. at 200, 88 S.Ct. at 2025].

In dismissing plaintiffs-appellants' action, the district court relied upon a decision rendered by a federal district court in Utah dismissing a similar suit, one brought by state welfare department employees against the State of Utah for recovery of overtime compensation under the FLSA. Briggs v. Sagers, 301 F. Supp. 1023 (D.Utah 1969). However, the Tenth Circuit has now reversed that decision. Briggs v. Sagers, 424 F.2d 130 (10th Cir.), cert. denied, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970).

A suit such as this one, by resident state employees against the State, does not fall within the literal terms of the Eleventh Amendment, which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has construed this amendment to bar suits in federal court brought by a state's own citizens, as well as citizens from other states. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Appellants contend that the State of Missouri has waived its Eleventh Amendment rights by continuing to operate the schools and hospitals knowing that the employees thereof are now afforded protection by the Fair Labor Standards Act. In urging a waiver of these rights, appellants rely primarily upon the Supreme Court's decision in Parden v. Terminal Ry., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed. 2d 233 (1964), and the Tenth Circuit's ruling in *Briggs, supra,* 424 F.2d 130.

In *Parden,* employees of an Alabama-owned railway brought an action in federal court against the state railway for personal injuries under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. Alabama contended that Congress lacked the constitutional authority to subject a state to a private suit under the FELA, without its express consent, because of the Eleventh Amendment guarantee. The Supreme Court concluded that the state's operation of a railroad in interstate commerce constituted a waiver of its sovereign immunity and operated as a consent to be sued by its employees in federal courts under the FELA. The Court ruled in *Parden* that consent to suit rested upon conditions Congress attached to the state's action, and actual assent need not be given. In so ruling, the Supreme Court relied in part upon its earlier decision in Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), where the Court permitted a Jones Act claim against a bi-state authority created by an interstate compact.[3]

3. In *Petty*, plaintiff brought an action under the Jones Act against an agency of the States of Tennessee and Missouri which had been created by a compact entered into between them with the consent of Congress. In approving the compact, Congress had attached a proviso that its approval should not be construed as affecting, impairing, or diminishing federal court jurisdiction over matters arising under the compact. Interpreting these instruments under federal law, the Supreme Court determined that the States had consented to this kind of suit, although, under state law, the language of the compact would have preserved the States' immunity from any tort liability such as asserted by the plaintiff. The Court reversed a panel of this court which, in Petty v. Tennessee-Missouri

The Court observed in *Parden*:

> Where a State's consent to suit is alleged to arise from an act not wholly within its own sphere of authority but from within a sphere—whether it be interstate compacts or interstate commerce—subject to the constitutional power of the Federal Government, the question whether the State's act constitutes the alleged consent is one of federal law. Here, as in *Petty*, the States by venturing into the congressional realm "assume the conditions that Congress under the Constitution attached." 359 U.S., at 281–82 [79 S.Ct., at 790]. [377 U.S. at 196, 84 S.Ct. at 1215]

The Tenth Circuit applied the *Parden* doctrine in *Briggs, supra*, and rejected Utah's defense of sovereign immunity to a federal court suit under the FLSA by state employees. The court said:

> [W]e think the express intent of Congress and the language of *Parden* must control the matter. The regulatory power of Congress, although limited to constitutionally defined matters, e. g., interstate commerce, is plenary as to those matters. Since the FLSA was enacted through the authority of the Commerce Clause, and inasmuch as the right of action imposed by the FLSA is fully within the congressional regulatory power, it would be incongruous to deny Congress the power to name a prompt, effective date for such amendments. To suppress that corresponding power would run counter to the plenary nature of the constitutionally defined regulatory authority and could, in part, defeat the purpose of urgently required legislation.

> \* \* \*

> When Congress constitutionally hinges the right of a State to engage in interstate commerce upon its amenability to a federal court suit by private parties, the States must decide *eo instante* whether to continue or with-

draw. [424 F.2d at 133–134 (footnotes omitted)]

By application of the principles of *Parden* and *Briggs*, we reject Missouri's claim of Eleventh Amendment sovereign immunity. We think it clear that actual consent by a state is immaterial when a plaintiff sues a state upon a cause of action based on rights expressly created by Congress. The state's consent results from the interrelation of the activities of the state and regulations placed thereon by Congress. *See generally* Private Suits Against States in the Federal Courts, 33 U.Chi.L.Rev. 331 (1966).

The majority opinion seeks to distinguish *Parden* on several grounds, asserting: 1) Since the FLSA provides remedies for violations of the Act through suit by the Secretary under §§ 216(c) and 217, employees may be able to sue their supervisors as individuals; the Act should not be construed, however, to authorize a direct suit against the State by state employees; 2) The remedy approved in *Parden* did not, as here, provide for a penalty of double damages plus attorney's fees; 3) In *Parden* the State of Albama exercised a proprietary function in operating a railroad; here Missouri exercises a governmental function in operating schools and hospitals; and 4) Missouri has continued an existing activity in the operation of schools and hospitals while, in *Parden*, Alabama commenced railroading twenty years after the enactment of FELA.

The first ground of distinction relates to a problem of statutory construction. In *Parden*, the Court considered an act, which, though conferring a federal remedy generally to railroad employees, did not specifically mention employees of state-owned railroads. 377 U.S. at 188–89, 84 S.Ct. 1207. The *Parden* Court nonetheless applied the act "to state railroads and their employees." 377 U.S. at 189, 84 S.Ct. at 1211.

Bridge Comm'n, 254 F.2d 857 (8th Cir. 1958), had ruled the bi-state agency an instrumentality of both States and immune from suit under the Eleventh Amendment.

Here, unlike the legislation considered in *Parden*, the 1966 amendment to FLSA specifically brought state employees of hospitals and certain schools within the coverage of the Act. Thus the issue which divided the Supreme Court in *Parden* is not present in the same context in this case. Mr. Justice White for the dissenters in *Parden* conceded:

> I agree that it is within the power of Congress to condition a State's permit to engage in the interstate transportation business on a waiver of the State's sovereign immunity from suits arising out of such business. Congress might well determine that allowing regulable conduct such as the operation of a railroad to be undertaken by a body legally immune from liability directly resulting from these operations is so inimical to the purposes of its regulation that the State must be put to the option of either foregoing participation in the conduct or consenting to legal responsibility for injury caused thereby.
>
> However, the decision to impose such conditions is for Congress and not for the courts. [*Id.* at 198, 84 S.Ct. at 1216]

Although the statute here under consideration is specific in its inclusion of state employees, we must next consider whether it is inferable from the Act that Congress intended that states be subject to private suit for violations of the FLSA. While we agree with the majority that the history of the 1966 amendments to the FLSA discloses no direct legislative expression of intent concerning the right of a state employee to sue his employer to recover unpaid compensation wages due under the Act, we find in the circumstances surrounding this legislation a strong inference that Congress intended to afford state employees the same direct right of suit against their employers as is possessed by covered employees of nongovernmental employers.

We have already noted that in enacting the 1966 amendments to the FLSA, Congress explicitly placed certain state employees within the coverage of the Act. Congress adopted these amendments in the light of other provisions affording employees a right to collect compensation against an offending employer "in any court of competent jurisdiction." 29 U.S.C. § 216(b). We think it unreasonable to presume that Congress would have intended the Act's protection to cover state employees, and at the same time deny them an appropriate forum in which to enforce their rights. As the Supreme Court noted in *Parden*:

> [W]e should not presume to say, in the absence of express provision to the contrary, that it [Congress] intended to exclude a particular group of such workers from the benefits conferred by the Act. To read a "sovereign immunity exception" into the Act would result, moreover, in a right without a remedy * * *. We are unwilling to conclude that Congress intended so pointless and frustrating a result. [377 U.S. at 190, 84 S.Ct. at 1211]

Under statutory language far less compelling, *Parden* interpreted the statute there in question to apply to state-employers and to authorize suit. Moreover, we do not believe that the existence of other indirect avenues of relief for the state employee under FLSA makes the *Parden* rationale inapplicable. These indirect avenues of legal recourse against the state include suit by the Secretary of Labor on behalf of employees under 29 U.S.C. § 216(c) or an action for injunctive relief under 29 U.S.C. § 217. *See* note 1, *supra*. The majority suggests that employees may sue their superiors under doctrines enunciated in Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Neither appellees nor the majority offer any reasons why these alternatives afford a more appropriate remedy than a private action by the employees against the State for violation of the Act. In fact, the Act's statutory scheme of enforcement seems to give preference to the individual's private right of action.

It specifies that: "Any employer who violates the provisions of [the Act] * * shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation * * *," 29 U.S.C. § 216(b); but authorizes the Secretary to bring an action on behalf of an employee only "[w]hen a written request is filed." 29 U.S.C. § 216(c). Since we find no statutory basis to indicate that individual employees should forego any personal right of action against the state as an employer, we would reject this argument.

For a second ground, the majority distinguishes the statute here from that in *Parden*, since the FLSA allows assessment of liquidated damages and attorney's fees. This issue is not yet before us in fact, since the district court dismissed the action in its entirety. While it is difficult for us to envision circumstances justifying the enforcement of penalty provisions of the FLSA against a state-employer in light of 29 U.S.C. § 260,[4] we, in accord with guidelines suggested in *Wirtz, supra,* see no reason "to strike down otherwise valid portions of the Act simply because other portions might not be constitutional as applied to hypothetical future cases." *Id.* at 200, 88 S.Ct. at 2026.

Thirdly, we see no necessity to distinguish *Parden* on the basis of the nature of the state's function—denominating the railroad in *Parden* as a proprietary function, and the schools and hospitals here as a governmental one. The majority cites no case to support this distinction. In *Wirtz, supra,* the Court noted: "* * * [I]t is clear that the Federal Government, when acting within a delegated power, may override countervailing state interests whether these be described as 'governmental' or 'proprietary' in character." (392 U.S. 195, 88 S.Ct. 2023). Moreover, that distinction appears immaterial in light of the rule that waiver of a state to suit turns on federal, not state, law. *See* discussion in *Parden, supra,* 377 U.S. 195–196, and dissenting opinion at 198, 84 S.Ct. 1207.

Finally, we turn to the suggestion that waiver by constructive consent to suit should not be implied since, unlike *Parden,* Congress legislated in this field long after Missouri had entered into the business of operating the schools and hospitals here in question.

We adopt the argument made by the court in Briggs v. Sagers, *supra,* 424 F. 2d 130:

Although *Parden* does rely in part upon an intervening lapse of twenty years, it is not so crucial to the principles involved as to cause reversal absent that fact. Appellees' interpretation of the case implies that because there was a twenty year delay in commencing the interstate business, Alabama must have made a knowing and intelligent waiver. If that were true, we think the twenty year language would increase in significance. However, the argument is unpersuasive in light of Alabama's contention that the State did not intend to waive its immunity or know that such a waiver would result. Furthermore, even the dissent in *Parden* did not view the opinion as pivoting on the fact of an intentional waiver. Rather, the dissenting Justices understood the majority to hold "that with regard to sovereign immunity, waiver of a constitutional privilege need be neither knowing nor intelligent." Under that rule, we think it sufficient that when Utah continued its operation of the institution, knowing of the passage of the 1966 Amendments, it waived its immunity to the remedies provided in the Act. [*Id.* at 134 (omitting footnote)]

We are unpersuaded by the logic of the majority. We continue to rely on the authority of *Parden* and *Briggs.*

Arguments advanced by the Secretary of Labor as amicus curiae demonstrate

---

4. That section grants discretion to the district court to deny liquidated damages if the employer shows "good faith" or "reasonable grounds" to believe his omission was not a violation of the FLSA.

practical support for a reversal in this case as consistent with the congressional purpose underlying the 1966 FLSA amendments to attain a "minimum standard of living necessary for health, efficiency, and general well-being of workers * * * with all deliberate speed consistent with the policy of the act and the welfare of the American people." 2 U.S.Cong. and Admin.News, 1966, at p. 3004.

The Secretary advises:

> To the already vast coverage of the Act, the 1966 amendments added some 11.3 million employees in 657,000 establishments. Of this increase, 2.7 million employees and 119,000 establishments were in the sector of local government employment. (Secretary's Report to the 92nd Congress under Section 4(d), FLSA 1971, Tables 29 and 35).

The sheer magnitude of the enforcement burden which has been extended to forty-six million employees and almost two million establishments and the practical impossibility of investigating more than four percent of these businesses per year, Hodgson v. Ricky Fashions, 434 F.2d 1261, 1263, n. 2 (5th Cir. 1970), demonstrates the strong need for employees of a state, like those persons in private employment, to possess a right of action against their employer. A suit by a state employee under § 216(b) represents the only remedial provisions of the Act which assures him of the opportunity of having his claim presented to a court. The Secretary possesses discretion to sue under § 216(c) and § 217. The Secretary's interest may not be identical to the personal interests of an individual employee.

Accordingly, we would hold that to effectuate the purposes of extending FLSA coverage to employees of state government, the state by conducting the specific activities falling within the Act, constructively consents to suit by its covered employees and waives its Eleventh Amendment immunity.

We would reverse and remand this case for further proceedings.

STEPHENSON, Circuit Judge (dissenting).

I join the dissent, but I add a comment in order to make my position unmistakably clear.

I read Parden v. Terminal Railway of Alabama, *supra*, as authority for the proposition that a State is amenable to private suit in a federal forum under certain carefully defined circumstances. Accordingly, I cannot agree, in view of the still live holding of the Supreme Court in *Parden*, that this complaint is deficient as a matter of law. I think, contrarily, that it alleges facts which, if true, provide a basis upon which *some* relief conceivably could be granted. In this connection I note that the Court specifically recognized that "one or more of the remedies the Act provides might not be available when a State is the employer-defendant." Maryland v. Wirtz, *supra*, p. 200 of 392 U.S., p. 2026 of 88 S.Ct.