## NECHES CANAL CO. v. MILLER & VIDOR LUMBER CO. et al.

Circuit Court of Appeals, Fifth Circuit.
March 14, 1928.

Rehearing Denied April 12, 1928.

No. 5110.

1. Navigable waters ⟨⇒26(1)—Lumber company using navigable stream held entitled to sue to restrain its obstruction by structure erected without permit (33 USCA §§ 401, 406).

Lumber company, which used navigable stream, obstructed in violation of statute by defendants, who failed to obtain permit required by 33 USCA § 401 (Comp. St. § 9971), held entitled to sue for injunction for removal of the structure causing the obstruction, under section 406 (Comp. St. § 9917).

2. Courts ⟨⇒288—Suit to enjoin obstruction of navigable stream held maintainable in federal court as arising under laws of United States (33 USCA §§ 401, 406).

Suit by lumber company to enjoin obstruction of navigable stream which company used, on ground that no permit had been obtained for the obstruction, was, under 33 USCA §§ 401, 406 (Comp. St. §§ 9917, 9971), maintainable in the District Court, as one arising under the laws of the United States.

3. Navigable waters ⟨⇒26(1)—Suit to enjoin obstruction of navigable stream and for damages held maintainable in equity, both as to granting of injunction and damages (33 USCA §§ 401, 406).

Suit by lumber company against canal company and city to enjoin obstruction of navigable

stream, under 33 USCA §§ 401, 406 (Comp. St. §§ 9917, 9971), on account of defendant's failure to procure required permit, was maintainable on equity side of the court, and equity could retain case to grant relief by way of damages prayed for, which could not be obtained in equity, except for the presence of the equitable feature of the case.

4. Navigable waters ⬅⟹26(3)—Lumber company held not entitled to loss of profits from closing mill due to obstruction of navigable stream, where condition of water from another cause would have prevented operation of mill (33 USCA §§ 401, 406).

In suit by lumber company under 33 USCA §§ 401, 406 (Comp. St. §§ 9917, 9971), for obstruction by sand dam of navigable stream, which plaintiff used for conveying logs to its mill, plaintiff's damages *held* limited to expense incurred in raising logs, which had sunk in river as result of the obstruction, and loss of profits on account of shutting down of mill was not recoverable, where evidence showed polluted condition of water backing up along river would have prevented continuance of operation of mill, even if dam had not been constructed.

Appeal from the District Court of the United States for the Eastern District of Texas; William I. Grubb, Judge.

Suit by the Miller & Vidor Lumber Company and others against the Neches Canal Company and others for an injunction and damages. From an adverse decree, defendant named appeals. Modified, affirmed, and remanded.

George Chilton, of Beaumont, Tex., for appellant.

A. D. Lipscomb, Oliver J. Todd, and J. B. Morris, City Atty., all of Beaumont, Tex., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The appellee Miller & Vidor Lumber Company, a Texas corporation, herein called the Lumber Company, filed in the court below its amended bill against the appellant, Neches Canal Company, a Texas corporation, the city of Beaumont, Texas, a Texas municipal corporation, and the Beaumont Irrigation Company, a Texas corporation, praying an injunction restraining the parties sued from obstructing or maintaining in the Neches river, without express authority from the Legislature of Texas and from the United States government, any embankment, dam, dike, or other obstruction preventing the free and open navigation of that river at all times by the Lumber Company, and for judgment against the parties sued for damages alleged to have been sustained by appellee from a dam alleged to have been erected in that river prior to the filing of the bill. The suit resulted in a decree which denied relief against the city of Beaumont and the Beaumont Irrigation Company, awarded against the appellant damages in a lump sum for the loss of profits which would have resulted from the operation of its mill near Beaumont during the time it was shut down, as stated below, for its expenses in raising logs which sank in the river, as stated below, and for depreciation in the value of its logs in the woods, which ·it was unable promptly to bring to·its mill by reason of the dam mentioned, and dismissed the amended bill in so far as it sought an injunction, without prejudice to the Lumber Company again applying for an injunction in case another structure should be threatened in the future, which does not comply with the acts of Congress and the orders of the War Department.

The pleadings and evidence show as follows: The city of Beaumont, located on the Neches river, about 60 miles from the Gulf of Mexico, owns a waterworks system for furnishing water, obtained from that river, to its inhabitants for drinking, domestic, and industrial purposes; its intake being located about 15 miles above the city. The appellant and the Beaumont Irrigation Company are engaged in supplying water for irrigation and industrial purposes, and procure their supplies of water from a bayou which connects with the Neches river; their intakes being above the city's and several miles above the mouth of the bayou. The Lumber Company owns and operates a lumber manufacturing plant located a short distance below the city of Beaumont, procures·its supply of logs for its plant from timber lands located on the Neches river more than 20 miles above Beaumont, and transports its logs in rafts by means of the Neches river to its mill. In 1925 there was an unusually prolonged drought in East Texas, lasting throughout the summer of that year. During that drought salt water from the Gulf of Mexico, polluted with sewage, dead fish, etc., made its way up the river above Beaumont. When it was discovered that the progress up the river of the polluted salt water was threatening to pollute the water supply of the city, of the appellant, and of the Beaumont Irrigation Company, the city, in co-operation with the appellant, without obtaining the permit required by the statute (U. S. C. tit. 33, § 401 [33 USCA § 401; Comp. St. § 9971]), constructed a sand dam across the Neches about one mile below the city's intake. If the progress of the pollut-

ed salt water up the river had not been arrested, the water supply of the city and of the appellant soon would have been rendered unfit for use for drinking, irrigation, or industrial purposes.

When passage down the river was closed by the dam, the Lumber Company had in the river logs in rafts, some of which sank by reason of the obstruction created by the dam, and on hand at its plant sufficient timber to enable it to run for some time. When that supply of timber was used up, its mill was shut down about 26 days, until timber could be floated around the dam through a canal, with locks, which was constructed. During that time the Lumber Company was getting the water required for the operation of its plant from the Magnolia Petroleum Company, which during that time was getting its fresh water supply from the city waterworks. After the amended bill was filed, and before the rendition of the decree appealed from, the above-mentioned dam was washed out by freshets. The evidence adduced persuasively indicates that, if the progress up the river of the polluted salt water had not been arrested at or about the time the dam across the river was completed, the water supply upon which the Lumber Company was dependent for the operation of its mill would soon have been cut off, because the water available was unfit for use, and that company, for the lack of a usable supply of water for itself and its employees, could not have continued to operate its mill during the time it was shut down. We do not think that that evidence warrants findings that, but for the dam, the Lumber Company, under then existing conditions, could have kept its mill in operation during the period it was shut down, and would have prevented the deterioration of the cut timber which remained in the woods while it could not be floated down the river because of the obstruction caused by the dam.

[1-3] The statute forbids the construction, in the absence of a prescribed permit, of such an obstruction of a navigable stream as the above-mentioned dam, and provides for the removal of such a structure being enforced by an injunction of a district court.

U. S. C. tit. 33, §§ 401, 406 (33 USCA §§ 401, 406; Comp. St. §§ 9917, 9971). The Lumber Company, being the user of the navigable stream which was obstructed in violation of the statute, was a beneficiary of the statute forbidding its obstruction, and the remedy given by the statute was available in behalf of the Lumber Company. The suit was maintainable in the court below as one arising under the laws of the United States, as a right asserted and a remedy sought by the amended bill were based on acts of Congress. Cummings v. Chicago, 188 U. S. 410, 23 S. Ct. 472, 47 L. Ed. 525. When the suit was brought it was maintainable on the equity side of the court, as under the state of facts alleged in the amended bill the equitable remedy of injunction was grantable. The case, being properly in a court of equity, could be retained to grant relief which would not be grantable, but for the presence of the equitable feature when the suit was brought.

[4] We are of opinion that the expense incurred by the Lumber Company in raising its logs, which sank in the river as above stated, was attributable to the unlawful obstruction created by the dam, in the unlawful construction of which appellant participated, and that the court was not in error in awarding against appellant damages so caused. As above indicated, we are not of opinion that the evidence warranted awards of damages for the Lumber Company's loss of profits during the time its mill was shut down, or for the depreciation in the value of its logs, the movement of which from where they were cut was delayed by the dam. The decree is modified, by striking the parts of it allowing to the Lumber Company damages for loss of profits and for depreciation of the value of its logs in the woods. As so modified, the decree is affirmed, and the cause is remanded, with direction that the court find from the evidence the amount of expense incurred by the Lumber Company in raising its logs, which sank in the river by reason of the obstruction created by the dam, and insert the amount so found in place of the amount awarded by the decree appealed from.

Modified, affirmed, and remanded.