Lester L. TATUM, individually and as
Trustee, Appellant,

v.

H. W. BLACKSTOCK, Appellee.

No. 19906.

United States Court of Appeals
Fifth Circuit.

June 25, 1963.

St. John Garwood, Jr., Houston, Tex.,
for appellant.

Myron M. Sheinfeld, Gerald S. Gordon,
Houston, Tex., for appellee.

Before HUTCHESON, WISDOM and
GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

This is an appeal by the defendant be-
low from an order granting a prelimin-

ary injunction by the United States District Court for the Southern District of Texas, enjoining the appellant Tatum from further construction activities on an area of low land or tidal flat, which is substantially covered by water at high tide.

The area consists of approximately 14 acres and it juts northward into Taylor Lake from a subdivision in which the plaintiff owns residence property (his home). On the west side of the area is Taylor Bayou, a navigable stream which empties into Clear Lake some 500 feet south of the area in question. At the point where plaintiff's property and other property in the subdivision join this low tidal flat, a man made channel has been dug running from the channel of Taylor Bayou on the west in an easterly direction and forming the south and east boundaries of the tidal flat, connecting with Taylor Lake. Thus the area is now completely surrounded by navigable water and in effect what was a peninsula is now rendered an island by the cutting of the man made channel, and the channel is navigable water of the United States.

The activities of appellant about which complaint is made consist of placing a pontoon bridge from the west side of the natural channel over to the tidal flat, the moving of construction, earth moving, and dredging equipment across the bridge onto the area, and the filling in of the area by transporting soil across the bridge and by dredging operations. After receiving notice and a complaint from the appellee, the Corps of Engineers, by letter dated May 23, 1962, ordered appellant to remove the bridge because it was erected in violation of 33 U.S.C.A. § 401, which makes unlawful "the construction of any bridge * * * over or in any * * * navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained * * * and approved by the Chief of Engineers * * *," and 33 U.S.C.A. § 403, which prohibits any construction, excavating and filling in any navigable waters of the United States without the authorization of Congress and the Chief of Engineers. The letter of the Corps of Engineers did not mention any of appellant's activities except to direct the removal of the bridge within 24 hours from receipt of the letter. Appellant removed the bridge by 9:30 P.M. on May 25, 1962.

On May 24, 1962, appellee filed suit in the United States District Court alleging that any construction on the tidal flat would alter the flow of waters in and over the area and the surrounding channels causing irreparable damage to his property, and praying that appellant be enjoined from further construction activities. Appellee testified that with the exception of three mounds, the tidal flat was regularly submerged by the ebb and flow of the tide; [1] that the elevation of the area, if appellant be allowed to continue, would block this flow resulting in an increase in the water level of the channel adjacent to appellee's property, flooding part of his property, resulting in silting of his property, and possibly affecting the navigability of the south end

1. "Q. (By Mr. Sheinfeld) With reference to this particular tidal flat, are there any portions of the tidal flat that are not regularly submerged or generally submerged by the ebb and flow of the tide? "A. Before this new deposit of material was placed on that tidal flat, these three mounds directly across the channel were the only portions that were above the water level on what I would call a mean or an average high tide. There are times when we have higher tides, and the entire thing is under.

"Q. Now, you said before these deposits; which deposits are you talking about? "A. The deposits placed on the tidal flat by Mr. Tatum within the last few days. "Q. All right, sir. "A. Now, other than those deposits. "Q. Now, tell the Court what use, if any, you have made of Taylor Bayou and the channel, tidal flat, the lake. "A. Well, I own a twenty-two foot boat. I navigate these waters for pleasure. I fish, and I shrimp, for my own use."

of Taylor Lake.[2] District Counsel of the Corps of Engineers testified that the Corps had declared the natural channel, over which appellant had placed his bridge, to be a navigable waterway, and accordingly, a permit would be required for the construction of the bridge involved. Indeed, no issue was made as to that fact.

■ It is clear that it is necessary to obtain a permit from the Corps of Engineers under existing law and regulations before submerged land may lawfully be filled, excavated, channelled and other similar activities performed thereon such as contemplated here, if the area is navigable, or if the proposed work would affect nearby navigable waters. The representatives of the Corps of Engineers who testified refused to state whether or not the area involved was navigable or non-navigable within the meaning of applicable regulations. After hearing the evidence, the court enjoined the appellant from further construction activities on the property involved until the appellant obtains a permit from the Corps of Engineers, or obtains some expression from them that no permit is required.

The appellant contends that the court erred with respect to the following: (a) in assuming jurisdiction of appellee's suit because there was no showing of sufficient special injury to confer jurisdiction; (b) the court erred in assuming jurisdiction over any activity other than placing the pontoon bridge, in the absence of a prior administrative determination that such activity affected navigation or navigable capacity and required a permit; and (c) that the court erred in assuming jurisdiction over the work being done on the disputed area because it is contended that such work was not related to navigation and could not affect navigable capacity of neighboring waters.

■ It is true that the court made no special findings of fact regarding special injury. The record does support the conclusion however, that if the appellant is allowed to proceed, the appellee's property is likely to be flooded, silted, the water level of the channel adjacent to appellee's property changed, and navigability in the south end of Taylor Lake possibly may be affected in some manner. In Neches Canal Co. v. Miller & Vidor Lumber Co., 5 Cir., 1928, 24 F.2d 763, this court held as follows:

"The Lumber Company, being the user of the navigable stream which was obstructed in violation of the statute, was a beneficiary of the statute forbidding its obstruction, and the remedy given by the statute was available in behalf of the Lumber Company. The suit was maintainable in the court below as one arising under the laws of the United States, as a right asserted and a remedy sought by the amended bill were based on acts of Congress. Cummings v. Chicago, 188 U.S. 410, 23 S.Ct. 472, 47 L.Ed. 525. When the suit was brought it was maintainable on the equity side of the court, as under the state of facts alleged in the amended bill the equi-

2. "Q. A few further questions, please. What damages, if any, have you suffered to your property so far?

"A. Well, first, there are no limitations as to the area this man may fill. I have a bulkhead and a boathouse and a boat slip off of this dredged canal. There is no reason for me to believe otherwise than that this man will fill with this clay and material a great portion of the man-dredged channel right back of my property. He is raising the elevation of the tidal flat to an elevation greater than the back of my property. During hurricanes and flooding and high tides, this mound of dirt will divert the currents and the flow of the water across my property to a great extent, and causing my property to silt. With each high tide, there is a certain degree of silt deposited on my property, and my boat slips, and the activity there of placing this huge mass of material in that area in effect puts a plug or a stopper in the south end of Taylor Lake. When these tides either come in—the strong current, with the high tides coming in and going out, will cause a great deal more flooding over my boathouse, my walks, and the back of my property."

table remedy of injunction was grantable. The case, being properly in a court of equity, could be retained to grant relief which would not be grantable, but for the presence of the equitable feature when the suit was brought."

In Neches a sand dam was constructed across the Neches River without obtaining a permit as required by 33 U.S.C.A. § 401. § 406 contains the following provision:

" * * * the removal of any structures or parts of structures erected in violation of the provisions of the said sections may be enforced by the injunction of any district court * * *."

It should be noted that at the time suit was filed by Blackstock, the plaintiff, appellant's bridge was in place. If the area is navigable, the activities of the appellant would require a permit, and the record amply supports the conclusion that navigable waters would be affected by such activities. Under authority of the Neches case we conclude that the court below had jurisdiction.

The appellant's other two contentions relating to the assumption of jurisdiction over the work on the disputed area in the absence of showing that a permit is required, and his contention that the work was not related to navigation and could not affect navigable capacity of neighboring waters, will be considered together. The appellant apparently takes the position that he is free to develop the property in question as he pleases until the Corps of Engineers restrains him. The representatives of the Corps of Engineers refused to state whether or not the area was considered navigable or whether the work being performed and proposed to be done related to navigation or could affect the navigable capacity of neighboring waters or the area within the expansion of nearby navigable waters. See 33 U.S.C.A. §§ 401, 403. There was some testimony from such representatives which tended to indicate that the area was either navigable or related to navigation or affected the navigable capacity of neighboring waters.[3] In the final analysis however, the representatives of the Corps of Engineers refused to classify the area

3. The testimony of a representative from the Corps of Engineers was indecisive to say the least:

"Q. If I may pursue the line of questions the Judge was asking just a little bit further, basically, as far as your regulations are concerned, it is not of too great concern to the Engineer, if any, whether that land is real marshy and low or whether it is a five or ten-foot elevation: If you are going to put bulkheads adjacent to a navigable stream or (2) if you are going to put canals and open them into a navigable stream or a navigable body of water, the Engineers require a permit for the bulkheading along a navigable water, or for the cutting into the navigable water, in connection with—a navigable water, do they not?

"A. Yes, sir.

"Q. And that doesn't bear on whether it is one foot or a hundred feet or six inches above water level, or maybe ten or twelve feet above water level, the land itself, I mean if it borders on a navigable stream or lake?

"THE WITNESS: May I rephrase my answer?

"THE COURT: Yes, certainly.

"A. Our regulations cover the filling in of the waters, and that would have to be submerged land for the filling to be covered.

"THE COURT: Your regulations do concern—

"THE WITNESS: The bulkheading—

"THE COURT:—the filling in of navigable waters?

"THE WITNESS: Yes, sir.

"THE COURT: Obviously.

"THE WITNESS: And I was not sure of the question. In navigable waters, filling in navigable waters and excavating.

"MR. DOEHRING: Yes.

"THE WITNESS: The bulkheading in navigable waters, the bulkheading in the waters are within our—or, of course, within the expansion of the navigable water or waters.

"Q. (By Mr. Doehring) All right. Let me see whether I understand one part of that, though. The filling, certainly, the land along the banks, here, · of Taylor Lake, would be land in the

or to state whether a permit was actually necessary.

The trial court did not affirmatively find that the area was navigable, but enjoined further activity pending a decision by the Corps of Engineers. Otherwise stated, the court felt that such activities should be enjoined until a permit was obtained from the Corps of Engineers, or until the Corps made some expression that no permit was required, both of which involve a determination of navigability and the effect, if any, on navigable capacity of neighboring waters. At the conclusion of the hearing, the court stated:

"I incline to the view that your so-called island is a part and parcel of the navigable stream. I don't care about making that holding at this time, however, although if I am called upon to decide one way or another that would be my holding, because I think that the Corps of Engineers ought to express themselves as to whether it is an area within their jurisdiction or not; * * * I think they should pass on it."

It was the feeling of the trial court, in determining whether or not injunctive relief should be granted that it was not necessary for the court to pass upon the question of navigability of the area or the effect of the proposed construction upon nearby waters which are admitted to be navigable.

Under the facts and in the circumstances in this case we approve the holding of the trial court that such questions should first be determined by the Corps of Engineers. If the Corps capriciously and arbitrarily neglects, fails or refuses to make the decisions suggested, that will be time enough to take appropriate action and apply appropriate remedies. Heretofore, the appellant has apparently made no effort whatever to get a permit or to obtain a decision from the Corps as to navigability and the effect of the proposed work on the navigable capacity of neighboring waters.

The law has long been settled that upon review of an order granting a preliminary injunction, the function of the appellate court is to determine whether the trial court abused its discretion. We do not review the case in its entirety on its merits. Mansfield Hardwood Lumber Co. v. Johnson, 5 Cir., 1957, 242 F.2d 45; Wooten v. Ohler, 5 Cir., 1962, 303 F.2d 759; Barnwell Drilling Co. v. Sun Oil Co., 5 Cir., 1962, 300 F.2d 298; Calagaz v. Defries, 5 Cir., 1962, 303 F.2d 588. It is the function of the trial court

---

navigable or along the navigable waters of Taylor Lake, would it not?

"A. * * * the part that is shown in blue, or the ordinary high water line.

"Q. Those would be what you would term the navigable waters? In short, according to that land outside of your blue would not be termed by you within the navigable waters?

"A. If the map is accurate, yes, sir.

"Q. All right. But what I am actually getting at is, the fact that land may be marshy does not, in your regulations, make it navigable waters, just that fact alone as such, does it?

"A. I am not in a position to say that the regulations cover marsh land as such, as being included in navigable waters.

"Q. If they—

"A. The marsh may be above the elevation of—

"Q. Navigable waters is generally construed by the Engineers to be wa-

ters which are in fact navigable by some form of light craft, is it not? I mean it doesn't have to be any heavy outboard motor, but a canoe or something like that, that is actually a means of commerce and transportation by water?

"A. By means of some sort, yes.

"Q. Is not the definition the Engineers use for navigable water a body of water used or capable of being used as a means of commerce or transportation of produce or goods over water?

"A. Yes, sir.

"Q. And in your opinion, then, would you think a marsh flat would be construed by the Engineers to be navigable water?

"A. I am not in a position to—

"Q. All right.

"A. To say what the Corps of Engineers—I am not going to make a decision as to what would be navigable in that sense."

**402**

to exercise its discretion in deciding upon and delicately balancing the equities of the parties involved. We do not find an abuse of discretion. Detroit Football Co. v. Robinson, 5 Cir., 1960, 283 F.2d 657; AFL-CIO v. American Airlines, Inc., 5 Cir., 1962, 303 F.2d 5.

The judgment is

Affirmed.