**MOBILE TOWING COMPANY, Plaintiff,**

v.

**M/V WEATHERLY et al., Defendants.**

**Civ. A. No. 5446-69-T.**

United States District Court, S. D. Alabama, S. D.

June 30, 1971.

Rae M. Crowe and T. K. Jackson, III, of Armbrecht, Jackson & DeMouy, Mobile, Ala., for plaintiff.

Thomas A. Hamilton and Harry H. Riddick, of Hamilton, Butler, Riddick & Latour, Mobile, Ala., for The M/V Weatherly, her owner Tankore Corp. and Global Bulk Transport, Inc.

J. Manson Murray, of Vickers, Riis, Murray & Curran, Mobile, Ala., for Mobile Launch Service, Inc. and Richard L. Rodgers.

R. F. Adams, Sr., of Johnstone, Adams, May, Howard & Hill, Mobile, Ala., for Glens Falls Ins. Co.

Mitchell G. Lattof, of Diamond & Lattof, Mobile, Ala., for Alabama State Docks & Terminal.

DANIEL HOLCOMBE THOMAS, District Judge.

This matter comes on to be heard on the motions for reconsideration of the Court's ruling of August 26, 1970, filed by the defendant, Alabama State Docks & Terminals (Docks), on March 10, 1971. The motions were taken under submission by the Court on briefs on April 16, 1971.

The issue presented by these motions is whether the Docks waived its sovereign immunity by operating Anchorage Number 2 [1] on the Mobile River.

The Alabama Supreme Court has repeatedly ruled the Docks cannot consent to suit according to State Law.

The United States Supreme Court in Parden v. Terminal Railway of Alabama State Docks, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), held that when a "State's consent to suit is alleged to arise from an act not wholly within its own sphere of authority but within a sphere . . . subject to the constitutional power of the Federal Government, the question whether the State's act constitutes the alleged consent is one of federal law." The Court went further to say that under federal law, "when a State leaves a sphere that is exclusively its own and enters into activities subject to congressional regulation, it subjects itself to that regulation as fully as if it were a private person or corporation."

The Fifth Circuit Court of Appeals in Centraal Stikstof Verkoopkantoor, N. V. v. Alabama State Docks Department, 415 F.2d 452 (1969), ruled that under federal law the Docks did not waive its sovereign immunity by acting as a public warehouseman. The Court stated that the essential issue before it was whether the Docks had entered into a federally regulated sphere in which a federal remedy was available. It conceded that there was much federal regulation of the activity but none created a federal remedy that was available to plaintiff.

This Court in Rivet v. East Point Marine Corp., 325 F.Supp. 1265 (1971) held that when the Docks acted as a stevedore, it waived its claim to sovereign immunity. The theory behind that ruling was that a federal remedy created by the Supreme Court [2] was thwarted by the Docks' sovereign immunity claim. The right to make an indemnity claim against the stevedore was not created by a Congressional Act as the remedy was in *Parden*. In fact, the Supreme Court in *Ryan* said that the right to claim indemnity was based on the stevedore's implied contract. Nevertheless, the *Ryan* doctrine is still a federal remedy.

---

1. A space along the east bank of the Mobile River, directly above Bankhead Tunnel where vessels may be moored.

2. Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

The 1968 Fourth Circuit Court of Appeals decision in Chesapeake Bay Bridge and Tunnel District v. Lauritzen, 404 F. 2d 1001, held at p. 1004 that:

> [c]ongressional regulation allows causes involving activities in and upon the navigable waterways of the Nation to be adjudicated in admiralty. 28 U.S.C. § 1333. Accordingly, we think liability of the Tunnel District to the Danish Suitor upon the Maritime tort was justiciable in the chosen instant court.

The Court in *Lauritzen* was saying that since the maritime tort (vessel struck a submerged hurricane-damaged tower) occurred on navigable waters, federal admiralty jurisdiction was invoked, thus equating admiralty jurisdiction with a federal remedy.

The Supreme Court in Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) prohibited such an equation. It held on p. 373, 79 S.Ct. p. 481 that:

> [a]lthough the corpus of admiralty law is federal in the sense that it derives from the implications of Article II (of the Constitution) evolved by the courts, to claim that all enforced rights pertaining to matters maritime are rooted in federal law is a destructive over-simplification of the highly intricate interplay of the States and the National Government in their regulation of maritime commerce.

The Court further said at p. 374, 79 S. Ct. p. 481 that:

> if one thing is clear it is that the source of law in saving-clause actions cannot be described in absolute terms. Maritime law is not a monistic system. The State and Federal Governments jointly exert regulatory powers today as they have played joint roles in the development of maritime law throughout our history. This sharing of competence in one aspect of our federalism has been traditionally embodied in the saving clause of the Act of 1789. . . . . .

An infusion of general maritime jurisdiction into the "federal question" grant would not occasion merely an isolated change; it would generate many new complicated problems. If jurisdiction of maritime claims were allowed to be invoked under § 1331, it would become necessary for courts to decide whether the action "arises under federal law," and this jurisdictional decision would largely depend on whether the governing law is state or federal. Determinations of this nature are among the most difficult and subtle that federal courts are called upon to make.

The *Lauritzen* decision is not the law of this Circuit. The Court in *C. S. V.* acknowledged the decision but distinguished the two cases factually without approving or disapproving its decision. Accordingly, this Court does not follow the *Lauritzen* ruling.

The Court in the case at bar does not find that a federal remedy exists that is thwarted by the Docks' claim of sovereign immunity.

Therefore, it is ordered, adjudged and decreed that the Court's order of August 26, 1970, denying the motion to quash return of service of summons should be and hereby is vacated.

It is further ordered that the motion to quash return of service of summons filed by Alabama State Docks Department on March 25, 1970, should be and hereby is granted.