INTRACOASTAL TRANSPORTATION, INC., and Anderson Marine Construction, Inc., Plaintiffs-Appellees,

v.

DECATUR COUNTY, GEORGIA, et al.,
Defendants,

Department of Transportation,
Defendant-Appellant.

No. 72–2700.

United States Court of Appeals,
Fifth Circuit.

June 29, 1973.

Rehearing and Rehearing En Banc
Denied Aug. 28, 1973.

William B. Brown, Asst. Atty. Gen., Arthur K. Bolton, Atty. Gen., Harold N. Hill, Executive Asst. Atty. Gen., Marion O. Gordon, Asst. Atty. Gen., Atlanta, Ga., for defendant-appellant.

Ben Kirbo, Bainbridge, Ga., for plaintiffs-appellees.

Harold Lambert, Bainbridge, Ga., for Decatur County.

Before WISDOM, GEWIN and COLEMAN, Circuit Judges.

GEWIN, Circuit Judge:

In this admiralty action, the State of Georgia appeals pursuant to 28 U.S.C. § 1292(b) from the district court's denial of its motion to dismiss on the grounds of sovereign immunity. After a careful review of the applicable law, we conclude that Georgia was entitled to avail itself of the sovereign immunity defense, and therefore reverse.[1]

---

1. At the outset it should be noted that this appeal deals exclusively with the Georgia Department of Transportation. There is no dispute that the Department of Transportation is the alter ego of the State of Georgia. See, Tounsel v. State Highway Department, 180 Ga. 112, 116, 178 S.E. 285 (1934). The propriety of the suit against Decatur County, Georgia, is not before this court. See, County of

The facts giving rise to the present controversy are not in dispute and may be summarized with brevity. Decatur County, Georgia, and the Georgia Department of Transportation are the alleged owners and operators of a drawbridge across the Flint River, a navigable waterway which flows through Decatur County. The appellees instituted the present action alleging that as a result of the negligent operation of the drawbridge they had suffered considerable damages.[2] Georgia then filed a motion to dismiss on the grounds of sovereign immunity asserting that it had not consented to the suit. Georgia bases its defense on the eleventh amendment to the United States Constitution.[3]

The appellees countered that the Flint River was a navigable waterway and structures built over it were subject to federal regulation.[4] They asserted that Georgia waived the defense of sovereign immunity by entering this federally regulated sphere of activity. The district court denied Georgia's motion to dismiss and we now review the propriety of that ruling.

■ We begin with the general observation that in a suit in admiralty, a state is entitled to the defense of sovereign immunity granted by the eleventh amendment. The Supreme Court has stated:

> We repeat, the immunity of a state from suit in personam in the admiralty, brought by a private citizen without its consent, is clear.[5]

The appellees argue, however, that Georgia has impliedly consented to this suit by building a bridge over a navigable waterway, which is subject to plenary control by federal statutes.

Appellees place primary reliance on Parden v. Terminal Railway of the Alabama State Docks Department.[6] In *Par-*

---

Lincoln v. Luning, 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890).

Thus, the dissent's conclusion that we have foreclosed all avenues of relief to the appellees is completely erroneous. We assume that on remand, appellees will be permitted to pursue whatever remedies under common law negligence are open to them against the county. In such event, as we recognize later in this opinion, the standards of care established by the Bridge Act of 1906, 33 U.S.C. § 491 et seq. may be utilized when an otherwise suable party is involved.

The appellees have placed in proper focus the issue before this court:

The sole issue before this Court is one of jurisdiction. It is Defendant's [Georgia's] contention that this Court has no jurisdiction because of sovereign immunity. It is Plaintiffs' contention that Defendant, by the operation and maintenance of a drawbridge over a navigable waterway of the United States, has waived sovereign immunity and thus the Court does have jurisdiction. The question then boils down to whether or not there has been a waiver of sovereign immunity. Appellees' Brief at 2–3.

We thus address ourselves to this "boiled down" issue.

2. Jurisdiction is based on 28 U.S.C. § 1331 (admiralty). Apparently appellee's tug and barge had no difficulty in moving under the bridge on their trip upstream. On March 5, 1971, after receiving heavy cargo, the tug and barge arrived upstream of the bridge on their return trip. It being the rainy season, the waters of the F. it River had risen to such an extent f it the tug could not pass beneath the b ). After notice was given by the tug, t e bridge was not raised for twenty-six days because it had been paved over by the state. On oral argument counsel for both parties informed the court that the bridge had not been opened for a long time, perhaps 40 years. The court was also informed that the bridge has now been officially closed and a new bridge will be constructed.

3. U.S.Const. amend. XI: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

4. See, Bridge Act of 1906, 33 U.S.C. § 491 et seq., which establishes standards for bridges over navigable waters.

5. Ex parte State of New York No. 1, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057 (1921); Ex parte Madrazzo, 32 (7 Pet.) U.S. 627, 8 L.Ed. 808 (1833).

6. 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964).

*den,* railroad employees sued an Alabama owned railroad under the Federal Employers' Liability Act,[7] for injuries resulting from their employment. Alabama contended that it was entitled to sovereign immunity under the eleventh amendment. The Court rejected Alabama's claim, stating:

> A State's immunity from suit by an individual without its consent has been fully recognized by the Eleventh Amendment and by subsequent decisions of this Court. But when a State leaves the sphere that is exclusively its own and enters into activities subject to congressional regulation, it subjects itself to that regulation as fully as if it were a private person or corporation.[8]

Appellees claim that their suit against Georgia falls within the *Parden* waiver exception to the sovereign immunity doctrine. We cannot agree with this conclusion.

A superficial reading of the *Parden* decision might lead one to the conclusion which appellees wish to have us adopt. Distilled to its basic holding, *Parden* stands for the proposition that a State impliedly waives its sovereign immunity defense when it: (1) enters a field which is regulated by federal statute;[9] *and,* (2) Congress has specifically created a remedy in private parties for the violation of the applicable federal regulatory statute.[10]

At least one circuit has upheld a state's sovereign immunity defense even where Congress has created a private cause of action under a federal regulatory scheme. See, Employees of the Department of Public Health & Welfare v. Department of Public Health & Welfare, State of Missouri, 452 F.2d 820 (8th Cir. 1971) (en banc). The Eighth Circuit rejected a simplistic reading of the *Parden* decision, correctly recognizing that many policy considerations must be weighed before a State can be said to have "waived" its immunity by conducting activities subject to federal regulation. The *Employees* case involved an action by state hospital workers against Missouri for overtime compensation provided by the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

The hospital workers based their waiver claim on 29 U.S.C. § 216(b) which created a private cause of action for an employer's violation of the FLSA's applicable substantive provisions. By a 1966 amendment to the Act, Congress subjected state hospitals to the overtime provisions of the Act. 29 U.S.C. § 203(s)(4). The Eighth Circuit rejected the argument that Missouri had waived its sovereign immunity defense by operating hospitals subject to the overtime provisions of the Act and in face of the provision in the act which created a private cause of action for employees whose employers violated the overtime provisions of the Act.

---

7. 45 U.S.C. §§ 51–60.

8. 377 U.S. at 196, 84 S.Ct. at 1215.

9. "Our conclusion is simply that Alabama, when it began operation of an interstate railroad approximately 20 years after enactment of the FELA, necessarily consented to such suit as was authorized by that Act." 377 U.S. at 192, 84 S.Ct. at 1213.

10. "Recognition of the congressional power to render a State suable under the FELA does not mean that the immunity doctrine, as embodied in the Eleventh Amendment with respect to citizens of other States . . . is here being overridden. It remains the law that a State may not

be sued by an individual without its consent." 377 U.S. at 192, 84 S.Ct. at 1213. See also, Rothstein v. Wyman, 467 F.2d 226, 238 (2d Cir. 1972); Knight v. New York, 443 F.2d 415, 418 (2d Cir. 1971); Red Star Towing & Transportation Co. v. Department of Transportation of New Jersey, 423 F.2d 104, 106 (3d Cir. 1970); Daye v. Pennsylvania, 344 F.Supp. 1337, 1347 (E.D.Pa.1972); Elliot v. Volpe, 328 F.Supp. 831, 834 (D.Mass.1971); Citizen's Committee for the Hudson Valley v. Volpe, 297 F.Supp. 809, 813 (S.D. N.Y.1969); DeLong Corp. v. Oregon State Highway Comm., 233 F.Supp. 7 (D. Or.1964), aff'd, 343 F.2d 911 (9th Cir. 1965), cert. denied, 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965).

Certiorari was granted and the Supreme Court in an opinion by Mr. Justice Douglas, affirmed.[11] The Court carefully distinguished the *Parden* decision. Whereas in *Parden,* Alabama began operation of a railroad twenty years *after* the enactment of the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, the state of Missouri had operated hospitals long before the enactment of the 1966 amendment which subjected them to the FLSA's overtime provisions.

Moreover, the Court was concerned with the *effect* a holding of implied waiver would have on the viability of the eleventh amendment. The Court noted that it is one thing to subject a State to suit when it enters into the rather unusual activity of operating a railroad "for profit" but quite another when the State operates a hospital which is widely recognized as a proper state function if not a compelled duty. All States operate hospitals and the burden created by holding a State amenable to private suits would have a greater impact on the financial resources of states than the particularly limited holding of *Parden.* This problem was accentuated by the fact that the Act provided for double recovery and attorney's fees for the successful private litigants.[12]

■ Apparently the crucial factor which must have weighed most heavily in the Court's reasoning was the absence of any express intent by Congress to subject the States to private suits. In face of the express limitations on a federal court's jurisdiction by the eleventh amendment, the court refused to expand the implied waiver theory or even entertain such a sensitive constitutional issue, without at least an express congressional provision which made a State amenable to such a suit. Justice Douglas stated:

It is not easy to infer that Congress in legislating pursuant to the Commerce Clause, which has grown to vast proportions in its applications, desired silently to deprive the States of an immunity they have long enjoyed under another part of the Constitution. Thus, we cannot conclude that Congress conditioned the operation of these facilities on the forfeiture of immunity from suit in a federal forum. 411 U.S. at 285, 93 S.Ct. at 1618.

\* \* \* \* \* \*

But we decline to extend *Parden* to cover every exercise by Congress of its commerce power, where the purpose of Congress to give force to the Supremacy Clause by lifting the sovereignty of the States and putting the States on the same footing as other employers is not clear. 411 U.S. 286, 93 S.Ct. at 1619.

Thus, the *Employees* decision added an additional requirement to the *Parden* test for determining whether a private party may successfully invoke a federal court's jurisdiction in his suit against a State. It is no longer sufficient merely to show that a State has entered a federally regulated sphere of activity and that a private cause of action is created for violating the applicable federal provision, but in addition the private litigant must show that Congress expressly provided that the private remedy is applicable to the States.[13]

■ It is apparent that appellees have met the first requirement of *Parden* because Georgia has entered a field of activity extensively regulated by federal statute. However a careful reading

11. Employees of the Department of Public Health & Welfare, State of Missouri v. Department of Public Health & Welfare, State of Missouri, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

12. See, 29 U.S.C. § 216(b).

13. See also, Hickman v. Idaho State School and Hospital, 339 F.Supp. 463 (D.Idaho 1972); *contra,* Briggs v. Sagers, 424 F.2d 130 (10th Cir. 1970). For an excellent discussion of the *Parden* decision, see, Note, Private Suits Against States in the Federal Courts, 33 U.Chi.L.Rev. 331 (1966).

of the "Bridge Act of 1906" compels us to conclude that Congress did not create a cause of action in private parties for a violation of the Act's standards. The act is penal in nature and enforcement of its provisions is vested in the Attorney General.[14]

■ We cannot concur in the result reached by the Fourth Circuit in Chesapeake Bay Bridge & Tunnel District v.

---

14. See 33 U.S.C. § 495. *Compare*, Bass Angler Sportsman Soc. v. United States Steel Corp., 324 F.Supp. 412 (3 Districts Ala.1971) (consolidated), aff'd per curiam, 447 F.2d 1304 (5th Cir. 1971) (Rivers & Harbors Appropriation Act of 1899, 33 U.S.C. § 401 et seq. does not grant enforcement powers in private parties.)

We are aware that some inroads have been made by this Court in recognizing that a cause of action is vested in private parties by the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. §§ 401 et seq. In Neches Canal Co. v. Miller & Vidor Lumber Co., 24 F.2d 763 (5th Cir. 1928), this Court held that a private party could enjoin another private party who had clearly violated 33 U.S.C. § 401 by building a dam over a navigable waterway without first obtaining the consent of Congress or the approval of the Army Corps of Engineers. However considering the constitutional complexion of the present suit we feel that the *Neches Canal* decision should properly be limited to the peculiar fact situation presented there.

The suit in *Neches Canal* was between private parties. None of the defendants there could assert the defense of sovereign immunity granted by the eleventh amendment. There the obstruction, a dam, was placed in the navigable waterway without a license or a permit; thus the acts of the defendants clearly violated 33 U.S.C. § 401. Of course an obvious difference is the fact that *Neches Canal* involved the Bridges and Harbors Act of 1899 while while the present suit was instituted under the Bridges Act of 1906, 33 U.S.C. § 491 et seq.

However more importantly, the court in *Neches Canal* merely utilized the applicable standards enacted by Congress to determine whether a court could properly grant the equitable relief there prayed for. The court observed that the plaintiff was an "intended beneficiary" of the congressional enactment and therefore the remedy provided by section 406, an injunction could be maintained by a private party. We receive many equitable considerations which influenced the reasoning of the court that are not present here. See generally, Tatum v. Blackstock, 319 F.2d 397 (5th Cir. 1963) (suit between private litigants).

The instant suit is for damages against a State. We conclude that under the teachings of the *Parden* and *Employees* decisions before a State can be held to have implicitly waived its eleventh amendment defense, Congress must have expressly created a remedy in private parties for the violation of the applicable federal regulatory statute. To conclude otherwise would require a finding that the Bridges Act of 1906 created a private cause of action, a statutory interpretation clearly not mandated by its provisions. Further we would have to take an additional step into the murky waters of congressional intent by assuming since Congress "intended" that the appellee be a beneficiary of the substantive prohibitions of the Bridges Act of 1906, this intended remedy is also applicable against a sovereign State. Such "bootstrap logic" can not withstand the constitutional shield erected by the eleventh amendment.

Additionally, we discern a new approach to a private litigant's attempt to sue a state under federal regulatory acts. Many students of constitutional law often question the purpose and focus of the eleventh amendment in light of several recent court decisions which have made its provisions a shallow and meaningless command. However we are not ready to cast aside the clear meaning of that provision without definite directives from Congress to do so.

Against the unambiguous prohibitions of the eleventh amendment, we deem it constitutionally insufficient for a court merely to conclude that Congress by enacting a federal regulatory scheme *implied* that a state would be amenable to its provision in a suit by a private party. If Congress wishes a state to be amenable to a private suit then we think it is up to that branch to take the proper action necessary for such a result. We believe it is an improper function of the federal judiciary to whittle away at the scope of a constitutional amendment under the guise of such slogans as "common sense" or "implicit purposes." Common sense tells us that the eleventh amendment has viability today as it did in 1906. Until Congress directs us otherwise, we refuse to do by judicial fiat what is properly within Congress' power to do under the commerce clause.

Lauritzen,[15] where the court held that the Act did create a cause of action in private parties. We feel that a careful reading of the cases relied upon will not sustain the conclusion reached by that court, particularly in view of the recent Supreme Court decision in the Employees case.[16]

■ The conclusion reached today is in accord with recent pronouncements of this Court. We have previously stated that:

> Further we do not deem a mere entry into an area regulated by internation-

al treaty as an automatic waiver of sovereign immunity. As long as the sovereign immunity claim does not prevent federal relief which would otherwise be attainable, we see no virtue in invoking federal jurisdiction. Here no relief is possible because no discrimination is evidenced.[17]

The "Bridge Act of 1906" does not create a cause of action in private parties and hence sustaining the state's claim to sovereign immunity will not deny appellees relief to which they would otherwise be entitled.[18]

15. 404 F.2d 1001 (4th Cir. 1968); *See also,* Adams v. Harris County, Texas, 316 F. Supp. 938, 947–949 (S.D.Tex.1970); *Contra,* Mobile Towing Co. v. M/V Weatherly, 343 F.Supp. 276, 278 (S.D. Ala.1971).

16. In denying the immunity defense, the district court in *Lauritzen* stated:

> It is true that the federal navigation regulations do not expressly provide a cause of action for injured parties as does the FELA, [referring to *Parden*] but such liability is clearly implied. Even though it be conceded that the statutes pertaining to the protection of navigable waters, 33 U.S.C. § 401 et seq., are penal in nature, it is clear that civil liability may be derived therefrom, both in favor of the United States, United States v. Perma Paving Co., 332 F.2d 754 (2 Cir. 1964), and private parties, Morania Barge No. 140, Inc. v. M. & J. Tracy, Inc., 312 F.2d 78 (2 Cir. 1962), 259 F.Supp. 633, 638 (E.D. Va.1966).

It is clear that the holding in *Perma Paving* is correct since obviously the defense of sovereign immunity must be denied when the United States seeks to enforce a federal regulatory statute. See, United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (1936); Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). However, *Morania Barge* merely stands for the proposition that the standards established in 33 U.S.C. § 401 et seq., may be used in a suit where independent jurisdiction already exists.

Such circuitous reasoning begs the question and flys in the face of the *Parden* decision. The conclusion that sovereign immunity has been waived can "only be warranted if exacted by the most express language, or by such overwhelming implication from the text as would leave no room for any other reasonable construc-

tion." Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). A statute will not be construed to limit any of the sovereign's pre-existing rights or privileges without express language to that effect. United States v. UMW, 330 U.S. 258, 272, 67 S.Ct. 677, 91 L.Ed. 884 (1947). It is apparent that *Parden* and *Employees* require more than a conclusion that a private cause of action is impliedly created, it mandates that it be created expressly against a State.

In affirming the district court's judgment in *Lauritzen,* the circuit court stated:

> The supplication of the State, and her reception into the Federal domain, meant surrender, pro tanto and pro tempore, of State sovereignty and submission to the paramount overlordship of the United States during the tenancy.
>
> \* \* \* \* \*
>
> Congressional regulation allows causes involving activities in and upon the navigable waterways of the Nation to be adjudicated in admiralty. 28 U.S.C. § 1333. Accordingly, we think liability of the Tunnel District to the Danish suitor upon the maritime tort was justiciable in the chosen instant court. 404 F.2d 1003–1004.

Georgia may have subjected itself to the overlordship of the United States when it entered this federally regulated activity, but it is unreasonable to conclude that it likewise subjected itself to suits by private parties.

17. Centraal Stikstof Verkoop., N.V. v. Alabama State Docks Dept., 415 F.2d 452, 455 (5th Cir. 1969).

18. Our decision is in accord with the conclusion reached by the Third Circuit in Red Star Towing and Transportation Co. v. Department of Transportation of the State of New Jersey, 423 F.2d 104 (3d Cir. 1970).

The order of the district court is reversed, and the cause remanded to that court with directions to dismiss appellees' complaint against the Georgia Department of Transportation.

Reversed and remanded with directions.

WISDOM, Circuit Judge (dissenting):

I respectfully dissent.

Today, the Court holds that even though a state has waived its immunity at common law and under the eleventh amendment by entering a federally regulated sphere of activity, it is still not amenable to suit by a private person for violating a federal statute unless Congress has *expressly* provided that the private enforcement remedy is applicable in suits against the states. The majority relies on Employees of the Department of Public Health and Welfare of Missouri v. Department of Public Health and Welfare of Missouri, 1973, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (April 18, 1973), to support its holding. I think, however, that a fair reading of that case discloses no such requirement. Furthermore, the Court's holding is in direct conflict with Parden v. Terminal R. Co., 1964, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233, a case which the Supreme Court did not purport to overrule in *Employees*.

In *Parden* the plaintiffs, citizens of Alabama, sued the defendant state-owned railroad in federal district court to recover damages under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., for injuries sustained while employed by the railroad. The FELA defined the term "carrier" as including "every common carrier by railroad while engaged in [interstate] commerce." 45

U.S.C. § 51. There was no express provision that the Act applied to state-owned railroads. Nor was there any indication to that effect in the legislative history. Nevertheless, the Supreme Court held that Congress impliedly intended the Act to apply to state-owned as well as privately-owned railroads and that it had the power to do so. The Court reasoned that the states, by adopting and ratifying the commerce clause, had authorized Congress to create such a cause of action and that Alabama, by operating an interstate railroad, had consented to suit under the Act and thus waived its immunity at common law and under the eleventh amendment.[1] In so holding, the Court rejected the argument of the dissenting justices that immunity should be disallowed "only when Congress has clearly considered the problem and expressly declared that any state will be deemed thereby to have waived its immunity. . . ." 377 U.S. at 198–199, 84 S.Ct. at 1216.

*Employees* presented a materially different situation. There, the plaintiffs, employees of state health facilities, sought to recover overtime compensation due under section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), and an equal amount as liquidated damages. The Supreme Court found that the suit was barred since Congress, in enacting the FLSA, did not intend to deprive the states of their immunity to suit by employees of state health facilities. The Court noted that originally section 3(d) of the Act defined "employer" as excluding the United States or any state or political subdivision of a state. In 1966, section 3(d) was amended to extend the Act's coverage to employees of state health facilities. But

---

1. The Court stated:

"By adopting and ratifying the Commerce Clause, the States empowered Congress to create such a right of action against interstate railroads; by enacting the FELA in the exercise of this power, Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the Act; by thereafter operating a railroad in interstate commerce, Alabama must be taken to have accepted that condition and thus to have consented to suit."

377 U.S. at 192, 84 S.Ct. at 1213.

the language of section 16(b), providing for private enforcement suits, was left unchanged.[2] In interpreting congressional silence on this issue, the Court focused mainly on (1) the burden that would be placed on the states by a finding that section 16(b) was applicable to suits against state health facilities and (2) the availability of alternate avenues for enforcement of the private party's rights under the Act. The Court observed that unlike the situation in *Parden*, extension of section 16(b) to suits against the states would have a pervasive and perhaps financially devastating effect on the operation of those facilities, which were not operated for profit. It said:

> Where employees in state institutions, not conducted for profit, have such a relation to interstate commerce that national policy, of which Congress is the keeper, indicates that their status should be raised, Congress can act. And when Congress does act, it may place new or even enormous fiscal burdens on the States. Congress acting responsibly would not be presumed to take such action silently. The dramatic circumstances of the *Parden* case, which involved a rather isolated state activity, can be put to one side. We deal here with problems that may well implicate elevator operators, janitors, charwomen, security guards, secretaries and the like in every office building in a State's governmental hierarchy. Those who follow the teachings of Kirschbaum v. Walling, [1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638] and see its manifold applications will appreciate how pervasive such a new federal scheme of regulation would be. 411 U.S. at 284, 93 S.Ct. at 1618.

Furthermore, section 16(b) allowed the employees to recover both the compensation due them and an equal amount as liquidated damages and attorneys fees. The Court said:

> It is one thing, as in *Parden* to make a state employee whole; it is quite another to let him recover double against a State. Recalcitrant private employers may be whipped into line in that manner. But we are reluctant to believe that Congress in pursuit of a harmonious federalism desired to treat the States so harshly. The policy of the Act so far as the States are concerned is wholly served by allowing the delicate federal-state relationship to be managed through the Secretary of Labor. 411 U.S. at 286, 93 S.Ct. at 1619.

With respect to alternate avenues for enforcement of the plaintiffs' statutory rights, the Court noted that sections 16(c) and 17 of the Act authorized the Secretary of Labor to enjoin violations and to obtain restitution in behalf of employees. Also, section 16(b) authorized employee suits in "any court of competent jurisdiction". Arguably, the Court said, this would permit the plaintiffs to sue in a state court to enforce their rights under the Act. In these circumstances, the Court was unwilling to infer that Congress intended to lift the states' immunity from suit.

The teaching of *Employees* may be stated as follows: Where (1) the fiscal burdens that would be placed on the states by the applicable federal statute are great and the new federal scheme of regulation pervasive and (2) there are alternate avenues for the enforcement of the private party's rights under the statute, a congressional intent to lift the states' immunity will not be inferred absent some indication to that effect in ei-

2. Prior to and after 1966, section 16(b) read in relevant part:

"Any employer who violates the provisions of section 6 or section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount of liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction. . . ."

ther the legislative history or the statutory language. On the other hand, where such extraordinary circumstances are not present and where there is no indication that Congress did not desire to exercise its power to its utmost extent, then, as in *Parden*, the states' immunity from suit will be deemed to have been lifted. The Court's holding is very much a rule of reason. It comports with established rules of statutory construction and is responsive to the demands for harmony created by our federal system.

Applying this standard to the present case, I think it clear that Congress has lifted the states' veil of sovereign immunity. The Bridge Act of 1906, 33 U.S.C. § 491 et seq., establishes standards of care for the maintenance and operation of bridges over the navigable waters of the United States. In relevant part, it provides that draw bridges shall be opened promptly upon reasonable signal for the passage of boats or other watercraft, 33 U.S.C. § 494. The Act does not impose enormous fiscal burdens on the states as part of new pervasive scheme of federal regulation. Nor does it pose a threat to the harmony of our federal system by allowing recovery of double damages or invading an area traditionally reserved to the states. To the contrary, the Act represents a necessary and historically accepted application of Congress' power under the commerce clause by insuring the safe and efficient operation of bridges over navigable waters. The paramount purposes behind the Act demand that the states, who typically own the bridges involved, be made amenable to suits for enforcement of the statutory standards. This is true regardless whether the plaintiff is the United States or a private party injured by the violation of a statutory provision designed to protect him. Thus, there is no reason to presume that Congress did not intend to lift the states' immunity in all cases.

Furthermore, unlike the plaintiffs in *Employees*, the plaintiff in the present case is not able to enforce his statutory rights by alternate means. There is no provision in the Act permitting the federal government to sue to recover the compensation due a private party for violations; nor does the Act specify that a private party may sue in state courts to enforce his rights. Rather than simply being relegated to another forum, as in *Employees*, here the plaintiff is presumably foreclosed from obtaining any relief in any forum.

I would conclude, therefore, that the plaintiff's suit is not barred by sovereign immunity. The majority would require express statutory language that private enforcement remedies are applicable in suits against the states. To me, however, such a rule is contrary to the case law, to common sense, and to the usual presumption that when Congress acts it is deemed to exercise its power to its utmost extent. Under the commerce clause, Congress had the authority to enact the present legislation. For the reasons previously stated, the Act should be construed as applying to private enforcement suits against the states. As the majority acknowledges, Georgia, by entering a federally regulated sphere of activity, waived whatever immunity it had at common law or under the eleventh amendment. There the matter should end.

I also disagree with the majority's holding that the Bridge Act of 1906, and in particular 33 U.S.C. §§ 494 and 495, do not create a cause of action in favor of private parties. Almost a half century ago, this Court held that the Rivers and Harbors Act of 1899, 33 U.S.C. § 401 et seq., an act similar to the one involved here, created an implied private right of action for equitable relief. Neches Canal Co. v. Miller & Vidor Lumber Co., 5 Cir. 1928, 24 F.2d 763. We stated:

The Lumber Company, being the user of the navigable stream which was obstructed in violation of the statute, was a beneficiary of the statute, forbidding its obstruction, and the remedy given by the statute was available

in behalf of the Lumber Company. The suit was maintainable in the court below as one arising under the laws of the United States, as a right asserted and a remedy sought by the amended bill were based on acts of Congress. 24 F.2d at 765.

In Lauritzen v. Chesapeake Bay Bridge and Tunnel Authority, E.D.Va.1966, 259 F.Supp. 633, aff'd 4 Cir. 1968, 404 F. 2d 1001, the Fourth Circuit held that the Rivers and Harbors Act of 1899 created an implied private right of action for damages against the state. As the district court said in that case:

> It is true that the federal navigation regulations do not expressly provide a cause of action for injured parties . . . but such liability is clearly implied. Even though it be conceded that the statutes pertaining to the protection of navigable waters, 33 U. S.C. § 401 et seq., are penal in nature, it is clear that civil liability may be derived therefrom, both in favor of the United States, United States v. Perma Paving Co., 332 F.2d 754 (2 Cir. 1964), and private parties, Morania Barge No. 140, Inc. v. M. & J. Tracy, Inc., 312 F.2d 78 (2 Cir. 1962). Violation of the navigation laws gives rise to a presumption of negligence, which, if not rebutted, may result in liability to the negligent party. Reading Co. v. Pope & Talbot, Inc., 192 F. Supp. 663 (E.D.Penn.1961), aff'd 295 F.2d 40 (3 Cir. 1961). We think it is evident that the regulations pertaining to the obstruction of navigable waters were manifestly intended for the protection of private parties such as the libelant here, even though the enforcement of these provisions was vested in the United States.

259 F.Supp. at 638. A similiar result was reached in Adams v. Harris County, Texas, S.D.Tex.1970, 316 F.Supp. 938.

The majority has not attempted to distinguish *Lauritzen* but is satisfied instead to dismiss it perfunctorily. Private civil remedies have been implied from federal statutes beginning in 1916

with Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874, where the Court held that an employee could recover damages under the Federal Safety Appliance Act. The Court stated: "[D]isregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied. . . ." *See also* J. I. Case Company v. Borak, 1964, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423; Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 1971, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619; Gomez v. Florida State Employment Service, 5 Cir. 1969, 417 F.2d 569; Note, Implying Civil Remedies from Federal Regulatory Statutes, 77 Harv.L.Rev. 285 (1963).

The present case is sui generis. The Bridge Act of 1906, 33 U.S.C. § 491 et seq., sets standards of care for the maintenance and operation of bridges over navigable waters. This Act was clearly intended to protect individuals such as the plaintiff in this case and imposed a correlative duty on the defendant to operate its bridges in accordance with those standards. "[The defendant's] violation of [its] statutory duty imposes civil liability in this as in any other case where, the violation of a duty causes injury to an individual to whom the duty is owed. For every right there is a remedy. If the right is created by a federal statute, the federal courts have the power to fashion an appropriate remedy." Breitwieser v. KMS Industries, Inc., 5 Cir. 1972, 467 F.2d 1391, 1397 (Wisdom, J., dissenting).

For the reasons stated, I would affirm the decision of the district court.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court

having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

WISDOM, Circuit Judge, (dissenting):

I would grant the rehearing for the reasons stated in my dissent to the majority opinion.